BILLY KEITH CARMON *v.* STATE OF INDIANA.

[No. 475S102.  Filed June 21, 1976.]

*James F. Stanton*, of Merrillville, for appellant.

*Theodore L. Sendak*, Attorney General, *Walter F. Lockhart*, Deputy Attorney General, for appellee.

PRENTICE, J.—The defendant was convicted in a trial by jury of murder in the second degree and sentenced to life imprisonment. His appeal raises the following four issues:

(1) Whether the prosecuting attorney made an adequate opening statement.

(2) Whether the verdict was sustained by sufficient evidence.

(3) Whether the trial court erred in denying a motion to suppress an in-court identification of the defendant.

(4) Whether the trial court erred in overruling a defense motion for mistrial.

ISSUE I

The prosecuting attorney's opening statement did not comply with the statutory requirements.[1] Rather, he merely stated that the State would present evidence to sustain the indictment and that such evidence would be circumstantial.

Although *Blume* v. *State*, (1963) 244 Ind. 121, 189 N.E.2d 568, indicated that more is required of the opening statement, we have more recently held that the summary nature of the State's statement does not constitute reversible error, unless the defendant was in some way surprised or misled thereby. *Alderson* v. *State*, (1974) 262 Ind. 345, 316 N.E.2d 367. There has been no such showing in this case.

---

1. Ind. Code § 35-1-35-1 (Burns 1975) provides: "* * * First. The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it. * * *."

## ISSUE II

Under this assignment, the defendant contends that he was entitled to judgment on the evidence by reason of the insufficiency of the evidence of the cause of the decedent's death and a variance between the allegations of the indictment and the proof in this respect. For a motion made under Ind. R. Tr. P. 50, there must be a total lack of evidence upon some essential issue, or the evidence must be without conflict, susceptible of only one inference, which is in favor of the accused. *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264; *Bash* v. *State,* (1970) 254 Ind. 671, 262 N.E.2d 386.

In the case before us, the indictment alleged that the defendant shot the deceased, then placed him in a body of water, and that death resulted from drowning. The defendant's contention is grounded in the State's inability to show the precise order of events surrounding and contributing to the death. The pathologist who performed an autopsy upon the decedent testified that he found contusions and hematoma in the face, a laceration below the right eye, a bloody nose, and a bullet hole between the sixth and seventh ribs. He further testified that he extracted a bullet from the body, that the cause of death was anoxia due to asphyxia due to drowning, that the contusions and hematomas were contributory causes and that the decedent might have been dead or in shock at the time he was shot. There was no testimony that the defendant had beaten the decedent, and the defendant asserts that the evidence fails because there was not proof beyond a reasonable doubt as to how the decedent had met his death. We believe the defendant misunderstands the requirements of proof beyond a reasonable doubt. While it is incumbent upon the State to prove each and every element of the offense, beyond and to the exclusion of a reasonable doubt, and while this includes a requirement of such proof that the defendant did cause the death, the preciseness that the defendant demands is not a requirement of the law. If there were, in fact, some variances between the

allegations of the indictment and the proof they were not such as would have misled the defendant in the preparation of his defense. In addition to the pathologist's testimony, there was testimony that the defendant had admitted to two witnesses that he had killed a man and dumped his body into the lake, and testimony that the bullet removed from the decedent had been fired from the same gun as had a second bullet which the defendant had fired in a robbery on the night prior to the time the decedent's body was found. We find no failure of evidence or prejudicial variance.

## ISSUE III

Witness, Carl Carney, was produced by the State to identify the defendant as the person who had fired a pistol in his presence in the course of a robbery, the bullet so fired and the bullet taken from the decedent's body having been fired from the same gun. Carney had previously identified the defendant in a one-man lineup held approximately two weeks following the robbery. The robbery had occurred the night prior to the time the decedent's body was discovered which was approximately two and one-half years prior to defendant's trial.

One-man lineups are not to be favored. However, the facts bearing upon the opportunity of this witness to observe the defendant truly supplied an independent basis for the in-court identification. *Neil* v. *Biggers*, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Fields* v. *State*, (1975) 263 Ind. 550, 333 N.E.2d 742.

Carney had been an attendant at an automobile service station which had been victimized, as previously mentioned, three men, including the defendant, drove into the service station, ostensibly to purchase gasoline. One remained with the automobile while Carney delivered the gasoline. The other two, identified by Carney as the defendant and one Caskey, alighted from the vehicle and went inside the building. After having received payment, Carney went inside the building, the defendant confronted him with a gun and demanded

money. As Carney obtained the money, the defendant held the gun near Carney's head and fired into the doorframe. Carney viewed the defendant and Caskey for some three or four minutes at close range. Despite the excitement of the incident, Carney had the presence of mind to obtain the license number from the bandit's vehicle and gave the police a detailed description of both the defendant and Caskey; and approximately one week later, and prior to the lineup, he picked the defendant's picture from a display of approximately fifty police file photographs.

At the lineup, Carney was told that there was a "suspect" in custody, and only one person, the defendant, was exhibited to him. Such procedure is subject to severe criticism, as it obviously opens the door to prejudicial suggestion. Considering Carney's ample opportunity for viewing the defendant during the robbery, the proximity in point of time of the robbery and the lineup, Carney's apparent presence of mind during and immediately after the robbery and the description given to the police, we believe the in-court identification had a sufficient independent source and that such identification was not tainted by the police impropriety in conducting the showup.

## ISSUE IV

Prior to the examination of witness Carney, it had been agreed by the presecuting attorney and the defense, with the approval of the court, that the examination of such witness would be conducted without reference to the robbery that was being carried out at the time the defendant fired the shot previously mentioned. Apparently, this was done in order that the jury not be informed of prior criminal involvement of the defendant which was not a part of the crime charged. Thereafter, State's witness, Sharon Bermingham, was called to testify concerning an admission made to her by the defendant, and the following colloquy transpired:

"Q  And did Billie Keith Carmon say anything to you or to your husband after he woke you up?

"A  Yes.

"Q  What did he tell you and your husband or your husband?

"A  He said that he just killed a man and we didn't believe him and—

"Q  Did he say anything else?

"A  Yes, he said he robbed a gas station and he dumped the body in Wolf Lake River he said.

"Q  Did he tell you the person he killed?

"A  No.

"Q  Did he tell you he dumped the body in Wolf Lake?

"A  Yes.

"Q  How long did you—was Billie Keith Carmon at your home that morning?

"A  I'd say perhaps approximately maybe an hour and a half.

"Q  Was any of these other people present when he made these statements of killing someone and robbing, stealing from the gas station and dumping the body in Wolf Lake?

"A  Yes.

"Q  Who were the people that were present?

"A  Barbara Wings my husband and Robert Caskey and Walter Bermingham.

"Q  Now, Barbara Wings is she also have the name of Barbara Caskey that you know of?

"A  Yes.

"Q  Do you know where she is at today?

"A  No.

"Q  Walter Carmon did you say?

"A  Bermingham.

"Q  Walter Bermingham do you know where he is at today?

"A  No.

"Q  Jimmie Bermingham do you know where he is today?

"A  Yes.

"Q  Would you tell me where he is at?

"A  No.

"Q  Do you know where Robert Caskey is today?

"A  Yes.

"Q  Would you tell me where he is at?

"A  In prison I am not sure which prison.

"Q  You don't know?

"A No.

"Q Mrs. Bermingham after Billie Keith Carmon had told you that he killed somebody and dumped the body in Wolf Lake, he robbed the filling station did he say where he who he robbed?

"A No.

"Q Didn't mention any filling station?

"A He said robbed a place that is all I heard him say.

"Q Did you see him with a gun at that time?

"A No.

"Q You didn't see a gun?

"A No.

BY MR. STANTON:

I would ask your Honor that the jury be excused.

BY THE COURT:

Jurors will be excused."

Whereupon, the defendant moved for a mistrial by reason of the references to the defendant's involvement in the robbery. The trial judge overruled this motion but thoroughly admonished the jury to disregard all testimony regarding the robbery.

An admonishment presumptively cures error in the admission of evidence, unless the contrary is shown. *Hubbard* v. *State,* (1974) 262 Ind. 176, 313 N.E.2d 346; *Martin* v. *State,* (1974) 261 Ind. 492, 306 N.E.2d 93; *Davis* v. *State,* (1971) 257 Ind. 46, 271 N.E.2d 893. No such showing was made in this case. The trial judge has great discretion in determining whether or not to grant a motion for a mistrial, and reversal will result only from clear error in his ruling. *White* v. *State,* (1971) 257 Ind. 64, 272 N.E.2d 312. There was no such error in this case.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 349 N.E.2d 167.