STATE of Indiana, Appellant,

v.

William R. LEWIS, M. D., Appellee.

No. 381S84.

Supreme Court of Indiana.

Dec. 31, 1981.

Rehearing Denied Feb. 24, 1982.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, Jack F. Crawford, Pros. Atty., 31st Judicial Circuit, Crown Point, for appellant.

W. Henry Walker & Associates, P. C., W. Henry Walker, William E. Davis, East Chicago, for appellee.

PIVARNIK, Justice.

On March 21, 1979, the Lake County Grand Jury returned an indictment against the Appellee-Defendant, Dr. William R. Lewis, charging him with the Performance of an Unlawful Abortion. He entered a plea of not guilty to this charge. Trial commenced on February 4, 1980. After the State rested, the defendant moved for judgment on the evidence, which motion was denied. The defendant rested and the State offered rebuttal evidence. After the State rested, the defendant again moved for judgment on the evidence. The court granted the motion as to the charge of Performance of an Unlawful Abortion, apparently due to the fact that the trial court determined that Mrs. Carr did not "abort." However, the court denied the motion with regard to the included offense of Attempted Performance of an Unlawful Abortion.

The case was submitted to the jury on February 8, 1980, on the charge of Attempted Performance of an Unlawful Abortion. After seven hours of deliberation, the jury was deadlocked. The Court declared a mistrial and discharged the jury on February 9, 1980.

On February 13, 1980, the State filed a motion asking the court to set the case for retrial. On February 20, 1980, defendant Lewis repeated his motion for judgment on the evidence pursuant to Trial Rule 50. On April 11, 1980, the trial court granted defendant's motion for judgment on the evidence. The State filed a motion to correct errors on June 6, 1980. Hearing was had on that motion on June 27, and on June 30, the court overruled the State's motion to correct errors. It is from this judgment that the State appeals. The State petitioned to transfer this case from the Court of Appeals to the Supreme Court pursuant to Appellate Rule 4 (A)(10). This petition was granted and transfer was so ordered on March 26, 1981.

The State claims that the trial court erred in granting defendant's Motion for Judgment on the Evidence after a hung jury and after a mistrial had been declared, and by incorrectly applying the "thirteenth juror" standard to the defendant's post-trial Motion for Judgment on the Evidence pursuant to Trial Rule 50.

In September of 1978, Lynda Carr, a thirty-one year old mother of four, was told by her family doctor that she was pregnant. Mrs. Carr wished to terminate the pregnancy.

On September 30, 1978, Mrs. Carr and a friend, Debbie Dotson, went to the Concord Medical Center in Chicago, Illinois, to arrange for an abortion. She was examined by Dr. Mandan Farahati, who diagnosed that she was fifteen weeks advanced in her pregnancy. Since the clinic performed only first trimester abortions, Mrs. Carr was refused an abortion and referred to a hospital in Wisconsin where the cost for a second trimester procedure would be six hundred

dollars. Being unable to raise that amount of money, Mrs. Carr took no further action to obtain an abortion until two months later.

On a suggestion from Miss Dotson, Mrs. Carr went to the Gary Northwest Indiana Womens Services, Inc., Clinic on November 28, 1978. Mrs. Carr was told initially that the cost for an abortion at the Gary Northwest Clinic would be two hundred dollars. She filled out a form consenting to an abortion. Mrs. Carr was then examined by the appellee-defendant, Dr. William R. Lewis. Both an internal and an external examination were performed. After the examinations, Lewis told Mrs. Carr that he could not perform a "suction curretage" method of abortion on her and that "something else would have to be done."

Mrs. Carr was then instructed by a nurse at the clinic to return the following Monday. She was told that at that time the doctor would put her to sleep, " 'inject small, little match-like things' into her and then something would be inserted into her stomach; that she would "go home and . . . abort the baby."

On Monday, December 4, 1980, Mrs. Carr returned to the Clinic, paid five hundred and ninety ($590) dollars in cash and received a receipt for that amount of money. She was instructed that she would be the last patient of the day because the procedure being used for her would take a little longer than the others. She was given a prescription for a drug called "TACE" and was told the drug was to dry up her milk after she aborted the baby. Since she had to wait she went to the drugstore and had the prescription filled and took some immediately. She was also given antibiotics so she would not get an infection, and other pills which she was to take the next day, if she had not gone into labor, to contract her uterus. She was instructed to go home to abort the baby and told that when labor pains started she was to go to the bathroom, put a plastic garbage bag in the toilet and "let it happen." She was to return the bag and its contents to Dr. Lewis for disposal.

After all of the other patients had left, Mrs. Carr had her stomach cleaned and Dr. Lewis inserted the "little match sticks" or dilators, into her cervix. Dr. Lewis inserted needles into her stomach and made four or five injections. Mrs. Carr became ill and vomited while in the doctor's office. She then went home and went to sleep. She vomited during the night. Her mother called an ambulance, but Mrs. Carr refused to go to the hospital. The ambulance was called again and police were also called. The police strapped Mrs. Carr down and took her to St. Mary's Medical Center. Dr. Phillip Kellar examined and diagnosed Mrs. Carr to be clearly in the late second trimester of her pregnancy. When she was admitted it was noted that an abortion had been attempted. Dr. Kellar kept Mrs. Carr under observation throughout the day. Her condition continued to deteriorate. Late in the evening of December 5, Dr. Kellar called in Dr. Chester Kmak, an obstetrician. Dr. Kmak examined Mrs. Carr, diagnosed her to be five and one-half months pregnant, incoherent, acutely ill, and determined that her condition was so critical that if nothing were done she would probably die. Assuming that the fetus was dead and that this was causing Mrs. Carr's condition, Dr. Kmak decided to perform a Caesarean section. A live baby boy was delivered. The child weighed one pound and four ounces, and measured twelve inches in length. It was determined to be five and one-half to six months maturity. The child lived for approximately two hours.

## I.

The State claims that the trial court erred in granting Defendant's Motion for Judgment on the Evidence. The State argues that the law in Indiana is clear that the failure of a jury in a criminal case to agree on a verdict and the subsequent declaration of a mistrial renders the initial proceeding a "nullity" entitling the State to a retrial. The State cites us to *Hinton v. State*, (1979) Ind., 397 N.E.2d 282; *State v. McMillan*, (1980) Ind., 409 N.E.2d 612; and *Harlan v. State*, (1921) 190 Ind. 322, 130

N.E. 413 for support for this claim. The State also brings to our attention that in *Hendry v. Crandall*, (1892) 131 Ind. 42, 30 N.E. 789, the court held that a judge was without power or authority to decide a case after the matter had been submitted to the jury and no verdict could be reached. Another case cited to us is *Murray v. Hauser*, (1898) 21 Mont. 120, 53 P. 99 in which the Montana Supreme Court ruled that a trial court erred in entering judgment for the defendant on a contractual claim after the jury failed to reach a verdict and had been discharged. The court there stated that the disagreement of the jury and their discharge resulted in a mistrial and that that which would have been a trial, had the jury rendered a verdict, became a nullity and that therefore, as a result of the declaration of a mistrial, the parties were restored to the same position they occupied before the trial.

In addition, it is argued that the State has a statutory right to a retrial after the declaration of a hung jury and a mistrial, and a jury is discharged.

■■■ Ind.Code §§ 34–1–21–7 and 34–1–21–8 (Burns 1973) provide:

Sec. 7. The jury may be discharged by the court . . . after they have been kept together until it satisfactorily appears that there is no probability of them agreeing.

Sec. 8. In all cases where the jury are discharged during the trial, or after the cause is submitted to them, it may be tried again immediately or at a future time, as the court may direct.

However, this statutory provision is subject to the Rules of Trial Procedure as promulgated by the Indiana Supreme Court. *State ex rel. Western Parks, Inc. v. Bartholomew County Court*, (1978) Ind., 383 N.E.2d 290. Legislative rules of procedure are effective unless a court rule supercedes them or they are incompatible, in which case the court rule takes precedence. *Neeley v. State*, (1974) 261 Ind. 434, 305 N.E.2d 434. Rules of civil procedure, whether statutory or court-made, are applicable to criminal cases where no criminal procedural rule

or statute exists. Ind.Code § 35–4.1–2–2 (Burns 1971 Repl.)

The conflict in this issue arises from the apparent grant of authority to the trial court to grant a motion for judgment on the evidence after the jury is discharged. Ind.R.Tr.P. 50(B). This section grants the trial court the power to enter judgment after the verdict. It is not specified, however, that provision is made for the granting of judgment on the evidence after a hung jury where no verdict is rendered. It is not specified that provision is made for submitting the issues to the jury and then entering judgment *absent* a verdict.

Ind.R.Tr.P. 50 was modeled after the corresponding federal rule. Changes were made, however, a ten-day time limitation for the making of a motion for judgment on the evidence after judgment in the federal rule was not included in the Indiana rule. W. Harvey, 3 Indiana Practice at p. 368 (1970). The federal rule also provided for the situation where no verdict was returned as follows, ". . . or if no verdict was returned such party within ten days after the jury has been discharged may move for judgment in accordance with his motion for a directed verdict." It further provided: "If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial." Fed.R.Civ.P. 50(b). Reference to the procedure for granting a Rule 50 motion where no verdict was returned was removed from the Indiana version of this rule. The State urges that this deletion was conscious and that Ind.R.Tr.P. 50 cannot logically be read to allow for a motion for judgment on the evidence after a hung jury.

Under Ind.R.Tr.P. 50(A), a party may move for judgment on the evidence during trial, after all the evidence has been presented and before judgment; or in a motion to correct errors or on appeal after a judgment. The trial court on its own motion may enter such a judgment at any time before a motion to correct error is required to be made; or if one is made, at any time before entering its order or ruling thereon.

Ind.R.Tr.P. 50(B) provides that:

"Every case tried by a jury is made subject to the right of the court, before or after the jury is discharged, to enter final judgment on the evidence, without directing a verdict thereon."

It appears clear that our Trial Rule 50 has granted the authority to the trial court to enter final judgment on the evidence either before or after a jury is discharged. We hold that the trial court here had the authority under Ind.R.Tr.P. 50 to grant a judgment on the evidence for the defendant where no verdict was returned and after the declaration of a mistrial and the discharge of the jury.

## II.

The State next claims that the trial court erred by incorrectly applying the "thirteenth juror" standard to defendant's post-trial motion for judgment on the evidence.

The standard to be applied to granting a motion for judgment on the evidence has been set forth by our Court. In *Huff v. Travelers Indemnity Co.* (1977) 266 Ind. 414, 363 N.E.2d 985 this Court discussed Ind.R. Tr.P. 50(A)(4) and Ind.R.Tr.P. 59(E)(7). In *Huff, supra*, the Court set out the proper standards for determining the relief to be granted when a judgment on the evidence is sought. *Huff* was a civil case in which a jury verdict was returned. Those standards were set out as follows:

"When the trial court is considering a motion for judgment on the evidence subsequent to the jury's verdict, it must view only the evidence favorable to the non-moving party and the reasonable inferences to be drawn from that evidence. The trial court may enter judgment only *if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim*, i.e., the evidence must point unerringly to a conclusion not reached by the jury. *McCague v. New York, Chicago & St. Louis R.R.* (1946), 225 Ind. 83, 71 N.E.2d 569, 73 N.E.2d 48. This is the same standard which applies to a motion for judgment made at the conclusion of the evidence, i.e., there must be a complete failure of proof.

'It is only where there is a total absence of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant. . . .' *Hendrix v. Harbelis* (1967) 248 Ind. 619, 230 N.E.2d 315; *accord, Vernon Fire & Cas. Ins. Co. v. Sharp* (1976) Ind., 349 N.E.2d 173; *Miller v. Griesel* (1974) 261 Ind. 604, 308 N.E.2d 701."

*Id.*, at 421, 363 N.E.2d at 990.

Recently the applicability of the "thirteenth juror" test to criminal cases was addressed in *Moore v. State*, (1980) Ind., 403 N.E.2d 335. The court in *Moore* held that the "thirteenth juror" standard applied to the question of whether or not a new trial was justified under Trial Rule 59. The use of the "thirteenth juror standard" which allows judges to weigh credibility and weigh evidence, cannot be applied in granting a Rule 50 motion for judgment on the evidence. A judgment on the evidence (directed verdict) in a criminal proceeding is proper only where there is a total absence of evidence on some essential issue or where the evidence is without conflict and susceptible to only one inference and that inference is in favor of the defendant. *Proctor v. State*, (1979) Ind., 397 N.E.2d 980; *Williams v. State*, (1979) Ind., 395 N.E.2d 239; *Estep v. State*, (1979) Ind., 394 N.E.2d 111; *Mitchell v. State*, (1978) 268 Ind. 437, 376 N.E.2d 473; *Carmon v. State*, (1976) 265 Ind. 1, 349 N.E.2d 167; *Carroll v. State*, (1975) 263 Ind. 696, 698, 338 N.E.2d 264; *Johnson v. State*, (1980) Ind.App., 413 N.E.2d 686; *Caudle v. State*, (1980) Ind. App., 404 N.E.2d 57; *France v. State*, (1979) Ind.App., 387 N.E.2d 66; *State v. Seymour*, (1978) Ind.App., 379 N.E.2d 535.

In the present case, in granting the defendant's motion for judgment on the evidence the trial court stated:

The Court finds that there is insufficient credible evidence upon which reasonable minds might fairly conclude guilt beyond a reasonable doubt of the crime of attempt to perform an illegal abortion, and

that judgment on the evidence should be rendered for the Defendant."

Record at 299.

The defendant argues that the trial court's statement reflects that the trial court used the correct standard and reached the decision that the State had produced no evidence on the issue of whether or not an abortion had been attempted. The State claims the trial court incorrectly applied the "thirteenth juror" standard, weighed the evidence and weighed the credibility of witnesses in granting the motion for judgment on the evidence.

This issue is not easily resolved by focusing on the limited number of words in this entry. The State urges that the use of the words "credible evidence" reveals the judge weighed the credibility of the evidence. The defendant alleges the entry is clearly a statement that the evidence was found to be insufficient. It is necessary to examine the record of the hearing to determine which standard was used. The record reveals that the judge was concerned with the conflicting evidence he had heard, and with the definitions of "attempt" and "substantial step."

Ind.Code § 35–1–58.5–2 (Burns 1979 Repl.) provides:

"Abortion shall in all instances be a criminal act except when performed under the following circumstances:

\* \* \* \* \* \*

(b) After the first trimester of pregnancy and before viability, for reasons based upon the professional, medical judgment of the pregnant woman's physician provided:

(1) All the circumstances and provisions required for legal abortion during the first trimester are present and adhered to; and

(2) It is performed in a hospital."

Attempt is defined by Ind.Code § 35–41–5–1 (Burns 1979 Repl.) as follows:

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

The State was required to prove three elements: (1) that the defendant Lewis "knew" that Lynda Carr was beyond her first trimester of pregnancy; (2) that defendant Lewis performed a "substantial step" in the process of performing an abortion on Lynda Carr; and (3) that the procedure was conducted in a place other than a "hospital" as defined by statute. It was stipulated that the procedure was conducted in a place other than a "hospital" as defined by statute, and there was no dispute on this issue.

The State introduced evidence on each of these essential issues, and there was conflicting evidence on these issues. The defendant claimed that he did not know that Lynda Carr was in her second trimester. However, Dr. Farahati, Dr. Kellar and Dr. Kmak all testified that Mrs. Carr was easily diagnosed as being in her second trimester. Doctors Costello and Moutvic, experts in obstetrics, testified that it would be almost impossible to accidentally or inadvertently diagnose a five and one-half to six months pregnant woman to be in her first trimester.

Defendant Lewis testified that he had not even started to perform an abortion on Mrs. Carr and that he therefore could not have accomplished any "substantial step" necessary to prove the crime of attempt. He claimed that when he inserted needles into her abdomen he was using an experimental method of amniocentesis designed by him to determine age of the fetus. He also maintained that he had not injected an abortifacient solution through the needle and had not perforated the fetus.

The State's evidence showed that Lynda Carr had paid $590 for an abortion and had signed a consent form for an abortion. She received instructions from the Defendant's nurse, and medication to dry up her milk and induce labor if it had not begun the next day. She testified she remembered something having been injected into her abdomen. Needle marks were found near her navel and dilators were found in her

cervix. She became ill and her condition then became critical. Expert witnesses testified that several of these acts are initial steps in the performance of an instillation method of abortion.

■■■ At the hearing on defendant's motion for judgment on the evidence, the Court repeatedly made references to conflicts in the testimony. It is obvious he was unconvinced of defendant's guilt. However, applying the proper standard to this Ind.Tr.R.Pr. 50 motion, it is clear that the trial court must view only the evidence favorable to the non-moving party and the reasonable inferences to be drawn from that evidence. Judgment may be entered only if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim. There must be a complete failure of proof. *Huff v. Travelers Indemnity Co.*, (1977) 266 Ind. 414, 421, 363 N.E.2d 985, 990. The State had met its burden of producing some probative evidence on each essential element of the charge, the evidence was conflicting, and the granting of the motion for judgment on the evidence was error.

### III.

The State also claims that the trial court erred in granting the defendant's motion for judgment on the evidence by misinterpreting the law of attempt and the definition of "substantial step." At the time of this trial our general attempt statute was new and there were few cases under it to guide the court.

In *Zickefoose v. State*, (1979) Ind., 388 N.E.2d 507 this Court set forth the two elements necessary for an attempt to commit a crime, (1) the defendant must act with the culpability or intent to commit the crime; and (2) the defendant must engage in a "substantial step" toward commission of the crime. The Court further stated:

"The liability of the defendant turns on his purpose as manifested through his conduct. If the defendant's conduct, in light of all the relevant facts involved, constitutes a substantial step toward the commission of the crime and is done with

the necessary specific intent, then the defendant has committed an attempt." *Id.*, 388 N.E.2d at 510.

■■■ Whether a substantial step has occurred is a question of fact, to be decided by the jury, based on the particular circumstances of each case. *Cowans v. State*, (1980) Ind., 412 N.E.2d 54, 55; *Himes v. State*, (1980) Ind., 403 N.E.2d 1377; *Cole v. State*, (1980) Ind., 403 N.E.2d 337.

As discussed in Issue II, *supra*, the only remaining issues were whether Lewis knew Lynda Carr was in her second trimester and whether Lewis did a substantial step to accomplish the abortion. In regard to the culpability of the defendant the evidence as set out before showed that three physicians who examined Mrs. Carr testified that she was between five and one-half and six months pregnant. They testified that this condition was easily determined, and that any doctor would have had to know that she was at that stage of pregnancy had he examined her. Dr. Lewis charged Mrs. Carr $590 for an abortion when the usual fee was $200 for a first trimester abortion. Dr. Lewis stated that he believed Mrs. Carr to be in her first trimester.

The defendant's conduct, as revealed by the evidence presented and set out previously, showed that Dr. Lewis accepted the fee to perform an abortion. He had Mrs. Carr agree to the abortion. She was instructed by Dr. Lewis' nurse and received medication from her. Dr. Lewis inserted dilators and performed amniocentesis. Evidence was heard that the saline abortion method is a two-step procedure. The first step is the withdrawal of fluid through amniocentesis; the second step is the infusion of a saline solution.

■■■■ The defendant emphasized that there was a lack of proof that "saline" was the substance injected to produce the abortion. He claims that because there were still things to be done to Mrs. Carr after she left his office, no offense was committed. However, the law of attempt clearly provides that the emphasis should be on "what the defendant has already done toward

committing the crime and not on what remains to be done." *Zickefoose, supra*, Ind., 388 N.E.2d 507, 510. Ample evidence was presented of the defendant's culpability and the commission of a substantial step toward performing the abortion. The defendant's motion for judgment on the evidence should have been denied and the granting of it was error.

## IV.

Defendant's final argument, that he cannot be retried, is based on the United States Supreme Court's recent decision in *Hudson v. Louisiana*, (1981) 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30. Tracey Lee Hudson was tried in the Louisiana state court for first-degree murder, and the jury found him guilty. Under Louisiana law, the only method of appealing was by motion for a new trial. The judge in that case found that there was no evidence to sustain the verdict of homicide and granted the motion. The petitioner was tried a second time and was again found guilty, which guilty verdict and judgment were affirmed by the Louisiana Supreme Court, *State v. Hudson*, (1978) 361 So.2d 858. Petitioner sought a writ of habeas corpus in the state Supreme Court contending that the Double Jeopardy Clause barred the state from trying him a second time, relying on *Burks v. United States*, (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. The trial court denied the writ, which was affirmed by the Supreme Court of Louisiana. The United States Supreme Court granted certiorari and held that a reversal due to a failure of proof at trial, where the state received a fair opportunity to offer whatever proof it could assemble, bars retrial on the same charge.

██ The decision in *Hudson, supra*, is not applicable to this case. Since the motion for judgment on the evidence should have been denied, the defendant is left in the same position as though the motion had not been made and the trial is ended with a hung jury. The state is not barred from retrying a criminal defendant after a hung jury has been declared.

In summary, the trial court can grant a motion for judgment on the evidence only when there is no evidence or reasonable inference to be adduced therefrom to support an essential element of the charge. Here there was evidence presented by the state on each element of the crime of attempted performance of an unlawful abortion.

The judgment of the trial court is reversed.

GIVAN, C. J., and HUNTER, J., concur.

DeBRULER and PRENTICE, JJ., dissent with separate opinions.

DeBRULER, Justice, dissenting.

The trial judge granted the defendant's motion for judgment on the evidence in the following manner:

> "The Court finds that there is insufficient credible evidence upon which reasonable minds might fairly conclude guilt beyond a reasonable doubt of the crime of attempt to perform an illegal abortion, and that judgment on the evidence should be rendered for the defendant."

In arguing that that trial court did not use the Trial Rule 50 standard, but rather the "thirteenth Juror" standard, the State relies upon the formulation of the latter rule in *Huff v. Travelers Indemnity Co.*, (1977) 266 Ind. 414, 363 N.E.2d 985, which is:

> "The trial judge in determining whether to grant a new trial sits as a 'thirteenth juror'. He should grant a new trial when, after sifting and weighing the conflicting evidence and the *credibility* of the witnesses, he believes that *a contrary result should have been reached in the minds of reasonable men*." 266 Ind. at 428, 363 N.E.2d 985 (Emphasis added by the State in its brief.)

The trial judge below does not state and I do not take his finding as indicating that the judge weighed conflicting evidence or judged the credibility of the witnesses. He states that "there is insufficient *credible evidence*". In so doing, I regard his finding as the equivalent of a finding that there was insufficient *"substantial"* evidence.

Such a statement does not indicate that the judge weighed conflicting evidence or judged the credibility of witnesses. We have said many times at the appellate level in reviewing a sufficiency of evidence claim that the conviction will be affirmed if there is substantial evidence of probative value to sustain each material element of the crime charged. *Brown v. State*, (1969) 252 Ind. 161, 247 N.E.2d 76. This is the same standard to be applied in ruling upon a motion for judgment on the evidence.

The majority opinion makes much of what went on during the hearing upon the motion, but I see those events as consistent with the application by the judge of the proper legal standard. On appeal we have briefs which recite the evidence most favorable to the verdict. Even then, resort to the record of proceedings and the testimony is common. The trial judge does not have the benefit of such briefs. A trial judge in considering a motion for judgment on the evidence must conduct an initial investigation into the entire body of the evidence to identify and sort out that which supports the party having the burden of proof and that which does not. He will normally give vocal consideration to the meaning of words, phrases and entire testimonies, point out conflicts, and, yes, even give voice to a belief that the defendant should be found not guilty. How many times have appellate judges been heard to say: If I had been on that jury I would probably have voted to acquit, but since I sit on a court of appeals I am duty bound to affirm the conviction?

I am satisfied that the judge had the authority to grant the motion following a mistrial on the basis of a deadlocked jury, and used the proper standard. The defendant stands acquitted according to law. I therefore dissent.

PRENTICE, Justice, dissenting.

I dissent for two reasons:

(1) The trial court committed no error.

(2) If the trial court did err, as determined by the majority, the matter is reviewable, if at all, only as a reserved question. Such an appeal does not anticipate a remand for retrial; and, in this case condi-

tional provisions against double jeopardy proscribe it.

## I

Under Issue I, the majority has held that the trial court "had the authority under Ind.R.Tr.P. 50 to grant a judgment on the evidence for the defendant. With this, I am in complete accord. It proceeds, however, to hold that under *Moore v. State*, (1980) Ind., 403 N.E.2d 335 and Ind.R.Tr.P. 50(C), it is limited to granting a new trial if there be any conflicting evidence. I also agree that under Ind.R.Tr.P. 59(J)(7) the trial court is so limited in civil cases, but it must be remembered that C.R. 16 makes our rules of civil procedure applicable in criminal cases only *"insofar as applicable* and when not in conflict with any specific rule adopted by this Court for the conduct of criminal procedure." (Emphasis added)

The provision of Tr.R.P. 59(J)(7) which limits the court to granting a new trial cannot be applied to criminal cases consistent with the double jeopardy proscription of our state and federal constitutions or with the very limited appellate rights of the State under Ind.Code § 35–1–47–2, (Burns 1979). Neither does Tr.R. 50(C) impose limitations upon the trial court's prerogatives under Tr.R. 50(A) or (B). Rather, it simply authorizes the exercise of those prerogatives, in a proper case, to fewer than all of the issues or parties.

The holding of *Moore v. State, supra*, is "that a trial judge, in ruling upon a motion to correct errors, has the duty to examine the evidence to ascertain whether or not there is evidence beyond a reasonable doubt to support the verdict." It does not hold that the court is limited to granting a new trial, in a criminal case, as it would be in a civil case. I acknowledge that such would be a reasonable inference to draw from the opinion, absent other considerations which were not before us in that case. However, the remand in *Moore, supra*, was simply to examine the evidence in ruling upon the motion. We did not say that the state could retry Moore, in the event that the

examination revealed either no evidence or insufficient evidence.

I can be comfortable with a policy of permitting the judge to weigh the evidence in ruling upon a motion for judgment on the evidence following the declaration of a mistrial by reason of a deadlocked jury. The State has had its opportunity to obtain a conviction and has failed. Under our practice heretofore, the decision as to whether to subject the defendant to retrial rests with the prosecutor. Unquestionably, in many cases the evidence of guilt is so strong that justice demands that the State have another chance. However, there are other instances when it should not. Who is in a better position to make that decision fairly and objectively, the judge or the prosecutor? I opt for the judge.

## II

Regardless of the correctness of the grant, by the trial judge, of a judgment on the evidence, the defendant may not be retried. There is no authorization for a reversal of the judgment following an appeal by the State upon a reserved question.

The right of the State to appeal from an adverse judgment in a criminal case is fixed by Ind.Code § 35–1–47–2 (Burns 1979), which provides:

"35–1–47–2. [9–2304]. Appeal by state.—Appeals to the Supreme Court may be taken by the state in the following cases:

"First. From a judgment for the defendant, on quashing or setting aside an indictment or information, or sustaining a plea in abatement.

"Second. From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.

"Third. From a judgment of the court arresting judgment.

"Fourth. Upon a question reserved by the state."

Additionally, the right of the State is limited to those instances. *State v. Sierp,* (1973) 260 Ind. 57, 292 N.E.2d 245, and cases there cited.

" 'Generally speaking, under the common law as understood and administered in this country, the state or United States had no right to an appeal or writ of error in criminal cases. It is apprehended that the reason for such a policy was built on the idea that, when the state in its sovereign capacity brought a citizen into its own tribunals, before its own officers, and in obedience to its own processes, and lost, its avenging hand should be stayed except in unusual cases where the power to appeal was expressly conferred.' 92 A.L.R. 1137." 260 Ind. at 60, 292 N.E.2d 245.

Insofar as the question of the trial court's authority to enter judgment on the evidence is concerned, this appeal is authorized by the fourth provision of the statute, "a question reserved by the state." The majority has gone much further, however, and has held that the State may retry the defendant. It is highly questionable that we should even entertain the issue of the correctness of the judgment, but it is not necessary to answer that question in order to determine the one under consideration.

I can find no case in this state where we have reversed the trial court following an appeal upon a reserved question. Rather, the decisions and opinions in all such cases previously determined have been limited to the conclusion that the trial court did or did not err.

Granting that the State's right to appeal is limited by statute, it follows that the State's post appeal rights are also so limited. Our current statute authorizes the retrial of appellee-defendants only in those cases where the appeal taken by the State was from an order or judgment by which the defendant was discharged *prior to trial.* Ind.Code § 35–1–47–4 (Burns 1979 Replacement).

Under the previous statutes, authority of the State to retry an appellee-defendant was expressly withheld.

"9–2102 [2329]. Appeal by state—Exceptions—Reserved questions—Bills of

exceptions.—The prosecuting attorney may except to any decision of the court during the prosecution of any cause, and reserve the point of law for the decision of the Supreme Court. The bill of exceptions must state clearly so much of the record and proceedings as may be necessary for a fair statement of the question reserved. In case of the acquittal of the defendant, the prosecuting attorney may take the reserved case to the Supreme Court upon an appeal at any time within one year [90 days]. *The Supreme Court is not authorized to reverse the judgment upon such appeal, but only to pronounce an opinion upon the correctness of the decision of the trial court.* The opinion of the Supreme Court shall be binding upon the inferior courts and shall be a uniform rule of decision therein. When the decision of the trial court is decided to be erroneous, the appellee must pay the costs of the appeal. [Acts 1905, ch. 169, § 286, p. 584.]" (Emphasis ours).

The 1955 amendment authorized such retrials only in those cases where the defendant had been discharged *prior to trial.*

The reversal and remand in this case is premised upon the evidence. For that reason alone it is questionable that the appeal should have been entertained. That question, however, need not be here determined.

In 1879 the trial judge directed a verdict for the defendant at the close of the State's evidence. The State appealed, insisting upon its right to argue both the law and the facts to the jury. The appeal was *dismissed.*

"Where the court cannot render a decision upon a matter of law, reserved in a criminal cause, without first passing upon the facts of the case, no appeal can be taken by the state."
*The State v. Overholser,* (1879) 69 Ind. 144, 145.

Also in 1879 the State attempted to appeal, as a reserved question, the correctness of an instruction directing a verdict of acquittal. The appeal was dismissed.

"We might look into the evidence, which is contained in the record, and say whether, in our opinion, there was or was

not any evidence tending to establish the intent charged, and therefore whether, in our opinion, the charge was or was not correctly given, but in so doing we should be deciding a question of fact, rather than one of law; for the correctness of the charge depends upon the presence or absence of evidence tending to prove the intent charged in the indictment. And the question arises whether an appeal lies to this court in such case."
*The State v. Campbell,* (1879) 67 Ind. 302, 303.

The point is, perhaps, explained no better than in *State v. Phillips,* (1900) 25 Ind.App. 579, 58 N.E. 727, wherein the State appealed from a judgment of acquittal on an agreed statement of facts. In dismissing the appeal, the court said:

" * * * The assignment is in effect that the court erred in finding appellee not guilty as charged. The opinion which this court is authorized to pronounce on appeals by the State must be upon matter of law and not of fact. *The purpose in allowing appeals by the State where a defendant has been acquitted upon trial is not to correct only error in the particular case, but to furnish a rule for the guidance of trial courts in future cases.* The State could not be granted a new trial, nor does the above statute authorize this court to review the facts and pronounce an opinion upon them. Should we in such a case look into the evidence and determine whether there was or was not evidence to sustain a conviction such determination would be binding upon no one nor would it furnish any rule for the guidance of trial courts. The error assigned presents for review only a question of fact, and not of law." 25 Ind.App. at 580, 58 N.E. 727. (Emphasis ours).

It is clear from the foregoing cases that retrials are not anticipated following successful appeals upon reserved questions.

In each of the following recent cases appeals by the State were entertained, following the grant of directed verdicts at the close of the State's case. Such appeals should have been dismissed because they were controlled by facts and the legal prin-

ciple involved was settled and needed no pronouncement. However, the importance of the cases, in the context of the case before us, is that in none was the cause remanded. Rather, the holding in each was simply "Appeal sustained." *State v. Kubiak,* (1936) 210 Ind. 479, 4 N.E.2d 193 (appeal sustained), *State v. Torphy,* (1940) 217 Ind. 383, 388, 28 N.E.2d 70 (appeal sustained), *State v. Schroeppel,* (1959) 240 Ind. 185, 162 N.E.2d 683 (appeal sustained), *State v. Patsel,* (1959) 240 Ind. 240, 163 N.E.2d 602 (appeal sustained).

There is no difference between a judgment on the evidence granted before the case is given to the jury and one afterwards, provided the jury has not returned a verdict. Both are dependent upon the judge's assessment of the evidence. He may make an incorrect decision in either. If the one stands as an acquittal, why should not the other? The state, at most may be entitled to an appeal of a reserved question but not to a reversal and remand for a new trial. Having been in jeopardy and having been acquitted following an opportunity for the state to present its evidence, the double jeopardy provisions of both our state and federal constitutions proscribe retrial of this appellee.