**Dinzel MILLER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1182S424.**

Supreme Court of Indiana.

May 6, 1983.

John M. Lyons, Lyons & Truitt, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was originally charged with one count of Murder. Later a count of Felony Murder was added and another count seeking imposition of the death penalty was also added. The underlying felony alleged in support of the Felony Murder count was Child Molesting or in the alternative Criminal Deviate Conduct. Appellant was tried before a jury and found guilty of Felony Murder. The jury recommended the

death penalty not be imposed. The judge accepted this recommendation and sentenced appellant to a sixty (60) year term of imprisonment.

The facts are these. Shortly before 10:00 P.M. on the night of July 18, 1981, a telephone call was made by an unidentified male to the DeMotte Ambulance Service requesting dispatch of an ambulance to Lot 204 in the DeMotte Trailer Park. When emergency medical technicians arrived approximately five minutes later they were met outside by appellant. He stated to the EMTs that there was a little girl inside the trailer whom he believed had stopped breathing. The technicians found two and a half year old Rachel Witt lying on the couch, dressed in a nightgown and panties. They put an oxygen mask on Rachel and immediately began administering cardiopulminary resuscitation or "CPR." When the technicians lifted her nightgown they noticed severe bruises to her abdomen. All testified that due to their observations of these injuries they immediately called police.

Local police responded to the report of the EMTs and went to the trailer. In the meantime appellant called Rachel's mother, one Charlotte Witt, who was at work. When Mrs. Witt arrived at the trailer, she was told Rachel was already on the way to the hospital. Appellant was taken into custody and questioned by police, on the basis he was suspected of having inflicted the observed injuries to Rachel. Before 11:00 P.M., however, he was released to drive Mrs. Witt to the hospital.

Upon Rachel's arrival at the hospital, medical personnel evaluated her condition as too critical for treatment there. A call was made to Methodist Hospital in Indianapolis to transport Rachel via "Lifeline" helicopter. Lifesaving efforts continued on the trip to Indianapolis. After a stop at the local police station resulting in more questioning of appellant, he and Mrs. Witt drove to Indianapolis.

The efforts of medical personnel at Methodist Hospital were unsuccessful. Rachel was declared dead at near 5:00 A.M. on July 19. Appellant and Mrs. Witt arrived there at about 5:45 A.M. and were informed Rachel was dead. Appellant was arrested later that day at his parents' home in Roselawn.

Given the nature of the issues raised by appellant in this appeal, it is necessary to set out the testimony of the physicians who treated Rachel in some detail. Dr. Michael Louck testified he was the first doctor to see Rachel, as he was on duty at the Jasper County Hospital emergency room that night. He testified Rachel showed signs of severe brain injury and that he noted bruising and lacerations around her left ear. He testified he counted twenty-three separate bruises on her abdomen and groin, and additional bruises to the buttocks. He testified he observed a "reddish drainage" from her rectum. He testified he did not perform a vaginal examination nor observe any vaginal injuries.

Dr. Ray Lynch testified he was the doctor on duty at Methodist Hospital on July 18 and 19, 1981, and that he was assigned to the "Lifeline" helicopter as the physician on board. His testimony substantially corroborated the testimony of Dr. Louck. He testified he observed a "dark fluid" coming out of the patient's rectum but that he did not perform a rectal examination. He testified he did not perform a vaginal examination, nor did he offer any testimony about injury to that area other than he observed injury to the groin.

Dr. Richard Strong testified he was the surgical resident on duty at Methodist Hospital on the night of July 18 and 19. He testified he performed exploratory abdominal surgery on Rachel and found massive internal injuries that could only have been caused by "blunt trauma" to that area. Dr. Strong testified that upon catheterizing the patient he noted "excoriations and lacerations" of the vagina. He also stated that upon examining the rectum he noted the presence of blood.

Dr. James Benz, the pathologist who performed the autopsy on Rachel testified he performed the autopsy with extraordinary care because he had been informed there

was a possibility of child abuse in the case. He testified he found a subdural hematoma to the brain of Rachel Witt. He testified the abdominal injuries were caused by forceful blows to the abdomen with a blunt instrument, and that these injuries were, in his opinion, the effective cause of death. As to the bruising of the buttocks, he stated it was his opinion "based on reasonable medical certainty" that those bruises were inflicted as a result of biting. As to vaginal injuries, Dr. Benz testified he observed bright red discoloration to the vagina but also stated unequivocally that there were no excoriations or lacerations of vaginal tissue. When asked if he could state "an opinion based on reasonable medical certainty" as to the cause of this discoloration he answered, "No, sir." Dr. Benz further testified the discoloration could have been caused by penetration by some object, diaper rash, vaginitis, or even masturbation. The latter, he stated, was not unheard of among female toddlers. He testified he found no evidence of semen in the vaginal canal. He testified he found no hymen present in the victim but that this was not unheard of, and further that he found no evidence of trauma to a hymen that had been present.

When Dr. Benz was asked to render his opinion as to whether Rachel's vagina or anal openings were penetrated by some object, his answer was that he could not "with reasonable medical certainty" so state. At one point he did testify it was "probable" that she was penetrated by some object. But he also stated he would have expected to find more trauma to this area than he found here if she had been so abused. Finally, he concluded it was fair to say he just "didn't know" if she had been penetrated.

Appellant took the witness stand in his own defense and testified that Rachel fell off the trailer porch at around 6:00 P.M. that evening and suffered her injuries. The various medical witnesses testified that, given the extent and severity of the injuries, her body weight, and the fact the trailer porch was only twenty-nine inches off the ground, the injuries could not possibly have been suffered as a result of such fall.

Appellant first claims there is insufficient evidence to sustain his conviction for felony murder. He claims the evidence, even when viewed in the light most favorable to the State, is insufficient for the jury to have concluded beyond a reasonable doubt that he either committed or attempted to commit either the underlying felonies of child molesting or criminal deviate conduct.

■ Felony murder is defined in I.C. 35–42–1–1 [Burns 1979 Repl.]:

"A person who:

\* \* \* \* \* \*

"(2) Kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony."

The elements of felony murder are (1) the killing of another human being, and (2) the commission or attempted commission of any of the named felonies, *i.e.*, the elements of that felony. *See, e.g., Snodgrass v. State*, (1980) Ind., 406 N.E.2d 641.

Child molesting, one of the underlying felonies in this case, is defined in relevant part as follows:

"(a) A person who, with a child under twelve [12] years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting . . . .

"(b) A person who, with a child under twelve [12] years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or satisfy the sexual desires of either the child or the older person, commits child molesting . . . ." I.C. 35–42–4–3 [Burns 1979 Repl.].

Criminal deviate conduct, the other underlying felony in this case, is defined in I.C. 35–42–4–2 [Burns 1979 Repl.] in relevant part as follows:

"(a) A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:

(1) The other person is compelled by force or imminent threat of force;

(2) The other person is unaware that the conduct is occurring; or

(3) The other person is so mentally disabled or deficient that consent to the conduct cannot be given; commits criminal deviate conduct . . . .

"(b) A person who knowingly or intentionally causes penetration, by an object or any other means, of the sex organ, or anus of another person when:

(1) The other person is compelled by force or imminent threat of force;

(2) The other person is unaware that the conduct is occurring; or

(3) The other person is so mentally disabled or deficient that consent to the conduct cannot be given;

commits criminal deviate conduct . . . ."

I.C. 35–41–1–2 [Burns 1979 Repl.] defines "deviate sexual conduct," a term used in the child molesting statute, as "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person."

■ The standard of review we use in sufficiency of the evidence questions is well-known. We do not reweigh the evidence nor judge the credibility of witnesses. Rather, we look only to the evidence most favorable to the State, and the reasonable inferences that may be drawn therefrom. If from that evidence and those inferences a trier of fact could have found beyond a reasonable doubt that each material element of the crime was proved, the conviction is affirmed. *Jordan v. State,* (1982) Ind., 432 N.E.2d 9; *Taylor v. State,* (1981) Ind., 425 N.E.2d 141; *Bond v. State,* (1980) Ind., 403 N.E.2d 812.

■ Appellant's argument is that the evidence in the case at bar is insufficient for the jury to have concluded beyond a reasonable doubt that he committed or attempted to commit either the underlying felonies of child molestation or criminal deviate conduct. In making this argument appellant focuses on those parts of the statutes defining those crimes that look to penetration of the anus or vagina of the victim as part of the offense. His contention is, given the equivocal nature of Dr. Benz' testimony as to penetration of the anus or vagina of Rachel Witt, this element of the underlying felony is not supported by sufficient evidence of probative value. However, appellant overlooks I.C. 35–42–4–3(b), which refers to child molestation as occurring where there is a "fondling or touching . . . with intent to gratify the sexual desires [of either party]." Dr. Benz was positive in his testimony that the elliptically shaped bruises he observed on the buttocks of Rachel Witt were caused by biting. The act of biting is certainly a kind of "fondling or touching." Moreover, the fact the biting was on the buttocks of a female victim supports a jury conclusion that the act was committed with the requisite intent to gratify sexual desires. The intent to gratify sexual desires may be inferred from circumstantial evidence. *Best v. State,* (1981) Ind. App., 418 N.E.2d 316. Notwithstanding the inconclusive nature of the evidence regarding penetration, this evidence is of sufficient probative value from which the jury could conclude beyond a reasonable doubt that appellant committed the offense of child molesting as defined in I.C. 35–42–4–3(b).

■ Appellant refers to the testimony of Dr. Benz regarding the bite marks and points out the State did not offer proof via expert testimony matching the pattern of the marks to the accused's mouth to establish that it was he who did the biting. This was done in another case he cites, *Niehaus v. State,* (1977) 265 Ind. 655, 359 N.E.2d 513. The standard of review in sufficiency of evidence questions entails examination only of the evidence the State did produce, not what it failed to produce.

We hold the evidence is sufficient to sustain appellant's conviction for felony murder.

■ In a related claim, appellant asserts the trial court erred in not granting his Motion for Judgment on the Evidence. This motion was not made at trial but rath-

er in appellant's Motion to Correct Error. Such a motion is authorized by Ind.R.Tr.P. 50(A)(4). In *State v. Lewis,* (1981) Ind., 429 N.E.2d 1110, 1114, we held such a motion is to be granted by the trial court "only where there is a total absence of evidence on some essential issue or where the evidence is without conflict and is susceptible to only one inference and that inference is in favor of the accused." The evidence shows the trial court ruled correctly on appellant's Rule 50 motion. In this case there was not a "total absence" of evidence on the issue of whether appellant's conduct fell within any part of the child molesting statute, nor was the evidence "without conflict" and susceptible to only one inference in his favor.

In arguing this issue appellant points to an affidavit attached to the Motion to Correct Error. In that affidavit appellant's attorney states that while the jury was deliberating, the trial judge stated to him, in an informal conference in the judge's office, that he felt the State failed to prove sexual molestation of the victim. Appellant asserts this statement by the judge in support of his entitlement to a favorable ruling on this issue.

Assuming the judge in this case made such a statement during jury deliberations, the record shows nothing more than that between the time the statement was made and the time the judge ruled on appellant's Motion to Correct Error, he changed his mind about the degree to which the State bore its burden of proof. On appeal we examine the judge's ruling on appellant's Motion for Judgment on the Evidence from the record before us as to facts tending to support elements of the crime. *State v. Lewis, supra.* What the trial judge may have thought about the status of the evidence in the case at that time is immaterial to us in our review. The trial court did not err in denying the motion for judgment on the evidence.

Likewise, the trial judge's failure to state a sex crime was committed in this case, when he gave his statement of reasons for the enhancement of appellant's sentence, has no bearing on this issue.

 Appellant's final argument is that the evidence in the case is insufficient for the jury to have found the presence of the intent necessary to sustain a felony murder conviction. The intent that must be shown in a felony murder prosecution is not an intent to kill but rather only the intent to commit the underlying felony. *Simpson v. State,* (1978) 269 Ind. 495, 381 N.E.2d 1229. The jury could have inferred the presence of an intent to gratify sexual desires from the circumstantial evidence before it. *See, Best, supra.*

The trial court is in all things affirmed.

All Justices concur.