**James D. CONN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 485S150.**

Supreme Court of Indiana.

March 28, 1989.

Michael J. McDaniel, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a conviction upon a count charging dealing in pentazocine, brand name Talwin, a Schedule II controlled substance. I.C. 35–48–4–2(a)(1); I.C. 35–48–2–6. The jury was unable to reach a decision on twenty-eight additional counts of forgery alleging the uttering of unauthorized prescriptions and insurance claim forms with the intent to defraud. An enhanced sentence of twenty years was given for the Class B felony.

The issues raised relate to the following events in the trial court:

1) The denial of a motion for change of judge.

2) The denial of a motion for mistrial and admonition of the jury.

3) The refusal to give an instruction on the defense of mistake of fact.

4) The refusal to give an instruction defining the lesser offense of delivery of a Schedule IV controlled substance and appurtenant verdict form.

5) The refusal to give an instruction defining responsibilities for dispensing Schedule III and IV drugs.

6) The grant of permission to defendant's co-counsel to withdraw from the case.

7) The refusal of the court to investigate the possible bias of a juror after commencement of the trial.

8) Questions and statements of the court during voir dire examination of prospective jurors regarding the right to remain silent and not testify.

9) The denial of a defense motion for a judgment of acquittal on the evidence on all forgery charges following all of the evidence.

10) The denial of a motion for change of venue from the county.

The evidence upon which the jury was warranted in returning a verdict of guilty on Count I, showed the following. Appellant was a licensed pharmacist on November 9, 1983, running the Marengo Drug Store. On that evening, one J.C. Gray entered the store at about closing time. He told appellant he wanted a couple of bottles of Talwin. Appellant went outside the store and looked around. He then went back inside, got them off a shelf and handed them to Gray. Gray paid appellant sixty-four dollars. Each bottle contained one hundred tablets. Appellant affixed no label identifying a dosage and prescription number. Gray did not provide a prescription for the tablets at the time. Gray exited the store and was arrested. He had seven hundred dollars on his person.

There was evidence that Gray was visiting the drug store three and four times a week and making drug purchases amounting to as much as two hundred dollars. Gray testified that he resold the drugs for a significant profit. An expert for the State testified that Talwin was classified in Indiana as a Schedule II controlled substance on the date in question and, at that

time, it appeared on the schedule in the statute as such.

Appellant was arrested. A search of the store pursuant to a warrant resulted in the seizure of many written prescriptions, including State's exhibit 24–A, an alleged prescription dated October 11, 1983 for one hundred tablets of Talwin, allegedly signed by a Dr. Snyder with a notation for five refills; and including state's exhibit 24–B, an alleged prescription dated November 7, 1983 for one hundred tablets of Talwin, allegedly signed by Dr. Snyder made out to J.C. Gray. There was evidence presented from which it could reasonably be inferred that these prescriptions were written by appellant in such a manner as to make them appear to have been written by Dr. Snyder and that Dr. Snyder had not authorized them in any manner.

After both sides had rested, the defense renewed its motion for judgment of acquittal on the evidence on all counts. The motion was denied. The jury was instructed as to all twenty-nine counts. The jury returned a verdict of guilty as to Count I, the delivery of Talwin, and reported in open court that it was unable to reach a decision on the remaining counts of forgery. The court received the single verdict of guilty and entered a judgment of guilty upon it. The court stated that the jury was hung and the jury was discharged. No express discrete order was made declaring a mistrial on the remaining twenty-eight counts. The defense made a motion for mistrial as to all counts, based upon alleged mishandling of the jury, which was denied.

I.

■ Appellant challenged the denial of his motion for judgment on the evidence in his motion to correct errors. The motion was denied. Appellant claims now on appeal that the evidence was insufficient to support a conviction on the forgery counts, arguing that the ruling on the motion for judgment on the evidence at the close of the case, as it relates to the forgery counts, was error.

In *Dunn v. State* (1973), 260 Ind. 142, 293 N.E.2d 32, cited by appellant, this Court reversed a murder conviction for insufficiency of evidence and ordered discharge. In so doing, the Court wrote that the denial of the defendant's motions for directed verdict had been error. There the appeal was from a judgment of conviction on a single murder indictment; and the directed verdict motion claimed insufficient evidence to warrant that conviction. Here, by contrast, there has been no judgment upon the forgery charges. The question presented is whether this Court should now canvass the evidence in support of the forgery counts to determine its sufficiency.

Most recently this Court recognized that a trial court would have jurisdiction to rule upon a criminal defendant's motion under Trial Rule 50 for judgment on the evidence, after a hung jury where no verdict was rendered. *State v. Lewis* (1981), Ind., 429 N.E.2d 1110. The State can appeal from the granting of such a motion and the standard to be applied by the trial court and by the appellate court is that a motion should be granted if there is no evidence or reasonable inference to be adduced therefrom to support an essential element of the charge. Appellant did not file a motion pursuant to Trial Rule 50 as in *Lewis;* however, he did file a motion to correct errors pursuant to Trial Rule 59, since amended, claiming that the trial court had committed error in overruling his motion for judgment on the evidence at the end of the trial and requesting discharge. The motion was denied. This motion served the same purpose as the Trial Rule 50 motion in *Lewis* and, if granted, would have been appealable under *Lewis*. *Id.* The denial of this motion to correct errors should, for appeal purposes, be treated the same as a denial of a Trial Rule 50 motion. *Lewis* did not decide whether the denial of such a motion was appealable. *Id.* We note at this point that the trial court has stayed further proceedings on the remaining forgery counts.

Appellant's sufficiency claim runs afoul of the rule requiring the existence of an appealable order. In those cases now pending against appellant on the remaining twenty-eight counts of forgery, there has

been no appealable order. The determination of a deadlocked jury and discharge of the jury is not final and appealable. The denial of the post-trial motion for judgment on the evidence, encompassed by the motion to correct errors, following the determination of a hung jury and discharge of the jury, is not final. It contemplates and permits the restarting of a trial on the unresolved charges; whereas, by contrast, the grant of such a motion as in *Lewis* does not. *Lewis*, 429 N.E.2d at 1117. For this reason, the sufficiency claim is not deemed presented. This ruling does not trench upon rights protected by the Double Jeopardy Clause because there has been no termination of first jeopardy. *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

## II.

Three young men lived and worked with appellant at the drugstore. They used drugs from the inventory with his knowledge. One defense theory was that they were victimizing him. A month before his arrest on these charges, appellant reported a robbery of the store by several unidentified men. One of the young men testified against appellant; and, on cross-examination, defense counsel brought this robbery to the forefront and sought to get the witness to admit that he had been one of the robbers. The main police witness was called by the defense and questioned in sweeping fashion about the scope of the investigation of the robbery. It was brought out that the investigation was stopped without an arrest or identification of the robbers. The inference raised was that of police corruption, incompetence or bias against appellant. On cross-examination by the trial prosecutor, the following occurred:

Q. Detective Graves, why was the robbery investigation suspended?

 \* \* \* \* \* \*

A. Information at the time that I interviewed Mr. Conn along with Trooper Gilbert on September the 28th, I advised Mr. Conn that in my opinion he was lying about the information that he was giving us; that's the reason that Trooper Gilbert asked me to help with the interview. He suspected that Mr. Conn was not divulging all of the information. I told Mr. Conn that in my opinion he knew who it was who had been to the pharmancy early that morning and robbed him, and I asked him if he would submit to a polygraph test and he refused.

Defense counsel moved for a mistrial because of mention of appellant's refusal to take the polygraph with its inference that he was a liar. The trial court denied the motion and refused another request for an admonition to disregard the testimony.

█ Proof of the fact that a polygraph examination was taken or was refused, like the result of a polygraph examination, is, in the absence of some sort of waiver or stipulation, inadmissible in a criminal prosecution. *Zupp v. State* (1972), 258 Ind. 625, 283 N.E.2d 540; *Williams v. State* (1978), 268 Ind. 365, 375 N.E.2d 226. A mistrial should be granted where the accused, under all the circumstances, has by such trial proof been placed in a position of grave peril to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. The prejudice to the rights of the accused from such proof may, in some instances, be sufficiently mitigated by an admonition to the jury. *Austin v. State* (1974), 262 Ind. 529, 319 N.E.2d 130.

█ The prejudice of this inadmissible testimony is that it tends to support the inference that appellant lied or is a liar. Nevertheless, the prejudice is in the low range. The lie to be inferred did not have a base or malicious motivation. It did not link appellant to the crimes charged. The lie did not directly undermine appellant's credibility as a witness, as he did not testify at trial. The lie would have, however, provided some basis for rejecting appellant's exculpatory statements which he made at the time of arrest which were described in the testimony of a State's witness. A lack of animus towards appellant at the trial is shown by the inability of the

jury to reach a verdict on twenty-eight of twenty-nine counts. On the basis of the foregoing, it was not error to deny the motion for mistrial. The motion for jury admonition should have been granted; however, the failure to do so did not prejudice substantial trial rights and was therefore harmless. Ind.R.Tr.P. 61.

### III, IV, V.

A general instruction on the defense of mistake of fact was submitted by appellant but refused by the trial court. An instruction upon the lesser offense of delivery of a Schedule IV controlled substance and an instruction describing the regulation limiting refills of Schedule III and IV drugs to five were also submitted by appellant and refused. He contends that it was error to refuse these instructions.

The instructions were correct statements of the law; and, therefore, we next examine the evidence tending to provide a foundation for them. *Jones v. State* (1988), Ind., 531 N.E.2d 478. Such evidence was provided by prosecution witnesses. Six tablets from each bottle seized from Gray were tested on May 16, 1984; and they contained unidentified inert material and pentazocine. On November 9, 1983, the day Gray got the bottles from appellant, pentazocine was classified under the state statute as a Schedule II controlled substance when contained in any quantity, in any compound or mixture. I.C. 35–48–2–6 (amended 1984). There was evidence that at the same time pentazocine was classified under federal law as a Schedule IV controlled substance when combined with certain ingredients rendering it less subject to abuse. This latter form was being marketed as Talwin NX. The two bottles so seized had labels with printing decipherable as Talwin NX and Talwin CIV.

■ A mistake of fact is one which is both honest and reasonable and one which negates culpability. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836; I.C. 35–41–3–7. The classification of pentazocine by state statute was not a fact susceptible of being mistaken. There is no intricate web of regulation. Pentazocine in all combinations was expressly listed as in Schedule II. The statutory classification was simplicity itself. Appellant was a trained, experienced and licensed pharmacist. The proof of these labels and the different federal classification did not warrant the mistake of fact instruction or the instructions on lesser offenses. It was not, therefore, error to refuse them.

### VI.

■ One week before trial, the trial court conducted a hearing upon a request by one of appellant's two lawyers to withdraw from the case. The request was based upon the fact that counsel was himself a party to a dissolution action set for hearing in another court on the same trial date. The court heard from counsel that each was prepared and heard from appellant that he objected, wanting both to appear. When pressed by the court to articulate a more specific reason for his objection, appellant stated that he needed time to inform the counsel who would stay on the case about some matters previously restricted to the counsel who would withdraw. The court noted the opportunity remaining to the defense to complete further preparation for trial and granted counsel leave to withdraw. On appeal, the ruling is claimed as error.

In a criminal case, the request of defense counsel to withdraw calls for consideration of the basic right to counsel, Ind. Const. art. 1, § 13; the statutory regulation, I.C. 35–36–8–2; and Disciplinary Rule 2–109 of the Indiana Code of Professional Responsibility which was in effect at the time of trial. The nature of the legal profession is such that there can be no unilateral right of counsel to withdraw. This first principle was stated in *State ex rel. Neeriemer v. Daviess Circuit Court* (1957), 236 Ind. 624, 142 N.E.2d 626:

> Consistent with that duty of an attorney to represent a client to the termination of a case in litigation, it has been held that an attorney may not withdraw from a case in litigation without proof of cause and/or consent of his client and the permission of the court.

Here, the dominant factor supporting the decision of the trial court was the presence of co-counsel. Co-counsel was already in a state of readiness, with an additional week left for further preparation. He in fact conducted himself at trial in a skilled and active fashion. Appellant's right to legal representation was fully protected, and the cause given by counsel in support of his request to withdraw would satisfy Disciplinary Rule 2–109(C)(4), allowing withdrawal where a mental or physical condition makes it difficult to effectively represent a client, and I.C. 35–36–8–2(b)(5) which sanctions withdrawal upon manifest necessity. The record amply demonstrates that the trial court balanced the competing interests affected by counsel's request and had a rational and reasonable basis for the ruling. It was therefore not error.

### VII.

In the middle of the trial, appellant was permitted to testify outside the presence of the jury and to present a business record from the files of the drug store. It carried the name of one of the jurors and purported to be an insurance claim for the cost of medicines purchased by the juror at appellant's drugstore. Appellant had no fast recollection of the circumstances surrounding the making of this record; but he claimed that it was forged and named a person who knew who had forged it. The form of this record was the same as those used in several of the charged forgeries. In response to defense requests, the trial court denied motions to further voir dire the jury, to excuse the juror whose name appeared on the record, and to declare a mistrial. Appellant considers each ruling error.

 If, after a trial commences, the court is presented with grounds warranting a reasonable belief that a juror has been subjected to prejudicial and improper publicity and influence or has personal knowledge of a material fact, the court should examine the juror under oath and determine the existence and extent thereof and take appropriate remedial action, including questioning of the jury, replacement of the juror, admonition of the juror or jury, or declaring a mistrial. *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819; I.C. 35–37–2–3. Here, the records and appellant's testimony describing them did not provide the court with sufficient grounds to conduct an examination. Whether viewed as genuine or as forgery, these documents did not provide the necessary support for an inference that a juror had knowledge of a material fact or would have been influenced to look adversely upon appellant or his cause. The variety of permissible inferences did not place appellant in a position of grave peril. The rulings were correct.

### VIII.

During voir dire examination of prospective jurors, defense counsel explained the privilege against self-incrimination and asked several jurors whether they would hold an exercise of that privilege against appellant. The responses were varied. Some were negative, taking the form of a statement that it would be hard not to hold such a thing against the defendant. Some were positive, taking the form of a statement that such is the right of every person. Defense counsel moved to excuse six of the jurors for cause based upon their responses to this line of questioning. The trial judge gave further explanation of the privilege and received the assurance of the six that they would not hold it against appellant if he chose not to testify. Defense counsel's motion was denied. Appellant also objected to the court's statements to the jurors on this subject.

 In Indiana, it is error for a court to instruct a jury concerning the Fifth Amendment privilege against self-incrimination, even in a legally correct form, in the absence of the consent of the defendant. *Hill v. State* (1978), 267 Ind. 480, 371 N.E.2d 1303; *Gross v. State* (1974), 261 Ind. 489, 306 N.E.2d 371. Such an instruction calls to the attention of jurors the fact that the defendant had the right to testify and did not, and can precipitate harmful and unwanted jury speculation as to the reason. The choice of whether that should

occur is therefore relegated in this state to the defendant and his counsel. Where, as here, however, the defendant adopts the trial tactic of openly educating prospective jurors about the source, nature and scope of the privilege and openly seeks its full benefit, the basis for jury speculation has been provided and the additional benefit of the Indiana rule abandoned. The adopted tactic calls for the jurors to apply the privilege and it is the trial court's duty to instruct the jury regarding the law which it is to apply. The trial court did not commit error when rehabilitating this group of prospective jurors on the subject of the Fifth Amendment.

### IX.

A defense motion for change of venue from the county was filed. It was supported by an affidavit claiming resentment and ill-feeling against appellant within the county based upon the nature of the charges and his unusual lifestyle. Such a motion is subject to a hearing and discretionary ruling pursuant to Criminal Rule 12. The totality of the incidents surrounding these charges does not indicate a strong case for a change of venue. *Baniszewski v. State* (1970), 256 Ind. 1, 261 N.E.2d 359.

The communities in Crawford County are small and the area generally rural. There were, however, no immediate and particularly gory or heinous injuries involved. There was no pattern of sensation and publicity leading up to the trial. Those purchasing drugs from appellant were travelling widely on both sides of the river in reselling them. Sales were not at all localized. Appellant was a local merchant, graduate of Purdue University and a licensed pharmacist. He was not unlawfully dealing in contraband, but legal, controlled substances. Any stigma attached to appellant's lifestyle would not be avoided by a change of venue. Potential jurors did not demonstrate any particular reluctance to set aside any preconceived notions of guilt and agree to render a verdict based upon the evidence. *Sage v. State* (1981), Ind., 419 N.E.2d 1286. A hung jury did result on the many forgery counts. There is no basis upon which to conclude that the trial court erred in denying this motion.

### X.

Appellant next contends that the trial court erred when it denied his pretrial motion for change of judge and its subsequent renewals during trial. The motion was verified and based upon (1) the setting of two hundred thousand dollar bail, (2) the finding of probable cause for the several charges, (3) the denial of the motion for change from the county and (4) restrictions placed on appellant's right to talk with witnesses both for and against him. On appeal, the judge's conduct in sentencing and refusal to set an appeal bond are added.

Judges are accorded a presumption that they are unbiased and unprejudiced in the matters before them. The reversal of a conviction is not warranted unless the record shows actual bias and prejudice against the defendant. *Smith v. State* (1985), Ind., 477 N.E.2d 857. Such appellate burden is not met here.

Each of the rulings and proceedings of the court enumerated in this argument represents a ruling against appellant. Each was made after respectful consideration of opposing arguments. There was no demonstration of animus on the part of the judge against the defendant, his counsel or the case for the defense. There was no effort made to belittle or ridicule the defense before the trier of fact. The court was firm, civil and ordinary when ruling. The rulings were appropriate in the given circumstances. There is no basis here to believe that appellant was the victim of bias or prejudice; and no error occurred when the judge denied the motion at the outset or later on when it was renewed.

The conviction is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.