**Leroy Edward BARKER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9208–CR–374.

Court of Appeals of Indiana, Second District.

Nov. 9, 1993.

Kay Beehler Ridgely, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

FRIEDLANDER, Judge.

Leroy Edward Barker (Barker) appeals his convictions of Burglary [1] and Attempt-

---

1. Ind.Code 35–43–2–1.

ed Rape,[2] both Class B felonies, and Battery,[3] a Class A misdemeanor. Upon appeal, Barker contends that the trials resulting in his convictions are nullities because of a master commissioner's involvement in certain stages of the proceedings.

We affirm.

A trial was held on November 21 and 22, 1991, resulting in Barker's battery conviction, but the jury was unable to reach a verdict upon the other two charges. A second trial was conducted on January 13 and 14, 1992, upon the unresolved charges.[4] The second trial resulted in his convictions upon the remaining counts that the jury was unable to decide at the first trial.

It is a master commissioner's involvement in the second trial which provides the basis for Barker's appeal. Master Commissioner Craig Wellnitz (the Master Commissioner) presided over the initial phases of the second trial. He explained his presence and role to the parties at the outset:

"Good Morning, Ladies and Gentlemen.... First of all, my name is Craig Wellnitz; I'm the Master Commissioner in this Court. And, I'm only going to be sitting this morning, through the jury selection, possibly Opening Statements, Preliminary Instructions, that sort of thing." *Record* at 294–95.

The Master Commissioner went on to explain that Judge Barney, the regular judge, was attending a funeral that morning, and that Judge Barney would assume the bench after the lunch break that day. Judge Barney did assume the bench following the noon recess.

During the morning proceedings, the Master Commissioner made several rulings about which Barker complains. Specifically, the Master Commissioner directed jury selection, swore in the jury, granted two motions in limine submitted by the State, granted Barker's motion for separation of witnesses, and denied Barker's motion for mistrial. Barker does not challenge the substance of the complained-of rulings.

Rather, he contends that Wellnitz, in his capacity as master commissioner, was not authorized to perform such functions.

Barker describes the instant case as "yet another opportunity for this court to state with certainty that a master commissioner is not, and cannot be endowed, with the judicial powers necessary to perform judicial functions in a criminal court." Brief of Appellant at 7. Although we conclude that Barker's views of the role and power of that position are overly restrictive, we nevertheless take this opportunity to further clarify the role and powers of a master commissioner.

The relevant statutes, set out below, make it clear that a master commissioner's role and powers are not coextensive with those of a judge. However, the master commissioner is not as devoid of power as Barker contends. The cases cited by Barker in support of his argument that the role of a master commissioner is exceedingly narrow are inapposite to the case at bar. Those cases involve situations in which a commissioner presided over trial, received the jury's verdict, and *was the only one to sign the judgment.* Our courts have unanimously held that a commissioner may not so act. *E.g., Schwindt v. State* (1992), Ind.App., 596 N.E.2d 936; *Breaziel v. State* (1991), Ind.App., 568 N.E.2d 1072; *Eakins v. State* (1985), Ind.App., 482 N.E.2d 1157. Indeed, this conclusion is compelled by Indiana Code 33–4–7–7, which states that a magistrate (and commissioner) "does not have the power of judicial mandate," and "may not enter a final appealable order unless sitting as a judge pro tempore or a special judge." The above cases, however, should not be understood to proclaim a general emasculation of the permissible functions of a master commissioner.

The error discussed in those cases is not present in the instant case. Rather, we are asked to consider whether a master com-

2. Ind.Code 35–42–4–1.

3. Ind.Code 35–42–2–1.

4. On November 27, 1991, the State amended Barker's information upon the two unresolved counts.

missioner may perform certain functions in a criminal trial. In making these determinations, we are guided not only by the statute proscribing certain activities (I.C. 33–4–7–7), but also by the statute setting forth those duties which a master commissioner may perform.

Indiana Code 33–5–35.1–8(f) provides that a master commissioner shall have the powers and duties prescribed for a magistrate. A magistrate's, and thus a master commissioner's, duties are set out in I.C. 33–4–7–4 as follows:

"A magistrate may do any of the following:

(1) Administer an oath or affirmation required by law.

(2) Solemnize a marriage.

(3) Take and certify an affidavit or deposition.

(4) Order that a subpoena by issued in a matter pending before the court.

(5) Compel the attendance of a witness.

(6) Punish contempt.

(7) Issue a warrant.

(8) Set bail.

(9) Enforce court rules.

(10) Conduct a preliminary, initial, omnibus, or other pretrial hearing.

(11) Conduct an evidentiary hearing or trial.

(12) Receive a jury's verdict.

(13) Verify a certificate for the authentication of records of a proceeding conducted by the magistrate."

We must determine whether the actions of which Barker complains were consistent with the aforementioned proscriptions and prescriptions regarding the powers of a commissioner.

### Jury Selection and Oath

■ Indiana Code 33–4–7–4(11) empowers a master commissioner to conduct trials. In addition, other subsections of that statute explicitly confer upon the master commissioner the power to perform a series of duties which may generally be described as duties which one presiding over trial must necessarily perform. Although presiding over jury selection is not specifically listed, it is an integral part of the jury trial process. It would hardly be in the best interests of judicial economy to require a master commissioner to wait until the jury is selected and sworn in before beginning his or her duties. Moreover, we perceive no reason why jury selection should be carved out of the trial process, in contravention of 33–4–7–4(11), as a portion of trial that only a duly appointed judge may perform.

Regarding the swearing in of the jury, subsection one specifically authorizes a master commissioner to administer oaths that are required by law. A juror's oath is such an oath and thus may be administered by a master commissioner.

The Master Commissioner was within the permissible boundaries of I.C. 33–4–7–4 and I.C. 33–4–7–7 in presiding over jury selection and swearing in the jury.

### Motions in Limine

■ The Master Commissioner granted two of the State's motions in limine. The power to conduct trials and evidentiary hearings necessarily carries with it the power to rule upon any evidentiary questions which may arise. *See, e.g., Rohrkaste v. City of Terre Haute* (1984), Ind. App., 470 N.E.2d 738, *trans. denied* (authority to rule upon motions in limine inherent in power to resolve evidentiary questions). As with jury selection, discussed above, ruling upon pretrial motions and evidentiary questions which arise during trial are integral parts of a jury trial. We note that the power to rule upon motions in limine is not inconsistent with I.C. 33–4–7–7(2), which prohibits a master commissioner from entering a final appealable order, inasmuch as a ruling upon a motion in limine is not such an order. *See Farm Bureau Insurance Company v. Crabtree* (1984), Ind.App., 467 N.E.2d 1220, *trans. denied.*

The Master Commissioner acted within the authority granted in 33–4–7–4 in ruling upon the State's motions in limine.

### Motion for Mistrial

■ During jury selection the Master Commissioner denied Barker's motion for

mistrial. Because Barker does not appeal the substance of the ruling, we need not address it in that regard.

For the reasons stated above with respect to ruling upon motions in limine and presiding over jury selection, motions for mistrial are an integral part of, and not uncommon in, the course of trial and thus authorizing one presiding over a trial to dispose of such motions is not only a fundamental component of the process but also a practical necessity. Therefore, the power to rule upon such motions is inherent in the power to conduct trials unless such action is statutorily prohibited.

I.C. 33–4–7–7 prohibits a master commissioner from issuing a final appealable order. A ruling which contemplates and permits the resumption or re-initiation of trial is not a final appealable order or ruling. *Conn v. State* (1989), Ind., 535 N.E.2d 1176, 1179–80. Barker's motion, if granted, would have resulted in a new trial. As it was, denial of the motion resulted in continuation of trial. Therefore, the Master Commissioner was not prohibited by I.C. 33–4–7–7 from ruling upon the motion for mistrial.

In summary, a master commissioner "acts as an instrumentality to inform and assist the court." *Rivera v. State* (1992), Ind.App., 601 N.E.2d 445, 446. Consistent with that purpose, a master commissioner is authorized to conduct trials. Inherent in the power to conduct trials is the power to perform duties that one who presides over such proceedings is customarily called upon to perform. So long as a master commissioner does not act in a manner which is in conflict with the prohibitions in I.C. 33–4–7–7, he or she may perform duties necessary to effectively preside at hearings and trials.

The judgment of the trial court is affirmed.

SULLIVAN and BAKER, JJ., concur.