# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2010

Lyle W. Cayce
Clerk

No. 09-40396
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

PAUL STEVE HICKS,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-1305-2

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Paul Steve Hicks challenges his conviction, following a jury trial, on charges of conspiracy to possess with intent to distribute over 100 kilograms of marijuana and possession with intent to distribute over 100 kilograms of marijuana. *See* 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846.

At the jury trial, Hicks's co-defendant Terrance Martin, a commercial truck driver, testified that in July 2008 he delivered a load to Brownsville, Texas, and then traveled to Laredo, Texas, to drop off the empty trailer and pick up another

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

load to return to Michigan. While he was in a Wal-Mart store in Laredo, he was approached by Hicks. Hicks and another individual, later identified as Howard Drumgo, offered Martin money in exchange for transporting marijuana. Martin testified that he ultimately agreed to transport the marijuana, picked up Hicks, and proceeded to a warehouse where the marijuana was loaded into Martin's trailer. Martin then drove towards San Antonio with Hicks as his passenger. They stopped at a Pilot store where Hicks purchased seals with which Martin sealed the trailer. The Government introduced the Pilot receipt into evidence.

United States Border Patrol Agent Brian Mitchell testified that, on July 29, 2008, Martin drove his tractor trailer, with Hicks as his passenger, into the checkpoint. A drug-sniffing canine alerted to Martin's trailer twice and agents then viewed the truck using a VACIS machine, which Mitchell described as a giant x-ray machine. The VACIS revealed what Mitchell termed "anomalies" in the cargo, and agents inspected the cargo. Agents found approximately 70 bundles of marijuana and placed both Hicks and Martin under arrest. The testimony of other Border Patrol agents Adam Aviles and Steve Nunez further detailed the inspections and subsequent arrest as described by Mitchell.

Special Agents Alvaro Benavides and Gabriel Colon with the Drug Enforcement Administration of the Department of Justice testified that they interviewed Hicks on July 30, 2008. The agents testified that Hicks admitted to them that he flew from John F. Kennedy Airport to Houston and traveled by bus with Drumgo to Laredo. The agents stated that Hicks admitted that his goal was to recruit truck drivers to transport marijuana. The agents further testified that Hicks told them that he approached Martin in the Wal-Mart McDonald's and that he and Drumgo offered Martin $3,000 to transport approximately 400 pounds of marijuana. After Martin agreed to transport the marijuana, Hicks told the agents, Martin picked up Hicks and they drove to a warehouse, where they remained in the truck while the marijuana was loaded into the trailer.

Hicks stated to the agents that he and Martin then left together in the loaded truck. Colon additionally testified that he later searched the tractor of the tractor trailer and discovered a leather bag, in which there were two bus tickets in the names of Hicks and Drumgo to travel from Houston to Laredo on July 26, 2008.

On appeal, Hicks argues that the district court plainly erred in admitting into evidence the Pilot store receipt and the bus tickets. Hicks argues that the time and date stamp on the store receipt and the information on the bus tickets were inadmissible hearsay. He asserts that not only were they used to prove the truth of the matter asserted, but also that the Government used them in closing argument to corroborate Martin's testimony and Hicks's post-arrest statement. Hicks further avers that the documents do not fit within an exception to the hearsay rule.

Hicks argues this issue in a wholly conclusory fashion. He does not cite to, much less brief the application of, the rules of evidence defining hearsay, FED. R. EVID. 801; prohibiting its admission, FED. R. EVID. 802; or defining the exceptions to the rule, FED. R. EVID. 803-807. *See* FED. R. APP. P. 28(a)(9). Nor does he support his argument with citation to relevant case authority. *See id*. Thus, he has waived this challenge to the admission of the store receipt and the bus tickets. *See id; United States v. Waskom*, 179 F.3d 303, 313 (5th Cir. 1999); *see also United States v. Thames*, 214 F.3d 608, 612 n.3 (5th Cir. 2000).

Hicks additionally challenges the prosecutor's references, in questioning witnesses and in opening and closing statements, to Hicks's statements to the agents as "admissions" or a "confession." Hicks argues that the prosecutor's referral to Hicks's post-arrest statements as "admissions" "cloak[ed] the agents' credibility with that of the office held by the Assistant United States Attorney." Hicks further avers that the prosecutor then built upon that basis by referring to Hicks's post-arrest statements repeatedly in closing argument as a "confession." Because Hicks raises this issue for the first time on appeal, we

review only for plain error. *See United States v. Rice*, 607 F.3d 133, 138 (5th Cir. 2010). We review assertions of prosecutorial misconduct by determining, first, whether the prosecutor made an improper remark and, if so, whether the improper remark affected the defendant's substantial rights. *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999). We consider remarks in context to determine their propriety. *Id.*

The cases cited by Hicks are ultimately inapplicable to the facts before this court. In those cases, the prosecutors essentially made direct statements about the credibility of their witnesses. *See United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999); *United States v. Goff*, 847 F.2d 149, 162 (5th Cir. 1988); *United States v. Garza*, 608 F.2d 659, 664 (5th Cir. 1979). The prosecutor's characterization, in the instant case, of Hicks's statements to agents as admissions, does not address, much less bolster, the agents' credibility and was thus unlike the cases cited by Hicks. Moreover, the prosecutor did not characterize disparate statements by Hicks as a confession or an admission of guilt on a particular charge, but rather asked witnesses about the admission of specific and discrete facts by Hicks. Hicks has failed to show that the prosecutor's questioning of the witnesses was improper. *See Gallardo-Trapero*, 185 F.3d at 320.

As to the prosecutor's reference to Hicks's statements as a confession, Hicks again fails to show plain error. *See Rice*, 607 F.3d at 138. Hicks relies on *United States v. Morsley*, 64 F.3d 907, 912 (4th Cir. 1995), for the proposition that a prosecutor's reference to a defendant's statements as a confession constitutes prosecutorial misconduct. *Morsley*, however, involved very different facts. *See* 64 F.3d at 912-13. In closing argument in *Morsley*, the prosecutor specifically asserted that the defendant had admitted to one of the charges against him. *Id.* at 912. Although the defendant had "certainly admitted several aspects of his involvement in the conspiracy," the Fourth Circuit concluded, "he did not formally 'confess' his guilt" and the prosecutor's remark was improper.

4

*Id.* at 913. In *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991), the prosecutor suggested that the government is too busy to prosecute innocent people. Although the statement did not bolster any witness's testimony, it acted as a personal observation that the defendant was guilty and suggested that the prosecutor had extra-record evidence proving the defendant guilty. *Id.* In the instant case, while questioning the witnesses, the prosecutor did not characterize disparate statements generally as a confession or admission of guilt on a particular charge, but rather repeatedly referenced the specific admissions of various facts made by Hicks to the agents. It was Hicks's own counsel who asked the agent extensively about recording "confessions" by witnesses.

In the prosecutor's opening argument, the prosecutor used the words "admission" or "admitted" in reference to discrete facts, and again not as a legal confession of guilt on the charges generally. In closing argument, the prosecutor reiterated the evidence presented at trial, noting that the Government had presented evidence that Hicks had admitted to certain facts. When the prosecutor referred specifically to the admitted statements as a confession, he did so in the context of noting that the admitted facts were supported by other evidence and that all of the admitted facts amounted to a confession. In referencing the "confession" in the instant case, the prosecutor was summing up the evidence that the Government produced and explaining the inferences that could be drawn from it. *See United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995). The prosecutor's last reference to the statements as a confession came directly in answer to Hicks's challenge that the Government ought to be required to videotape or transcribe directly confessions and was a fair rebuttal to Hicks's insinuation that the jury should acquit him in order to make a policy statement about recording confessions. *See United States v. Vaccaro*, 115 F.3d 1211, 1217 (5th Cir. 1997).

For these reasons, we AFFIRM the conviction and sentence.