# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 07 2018, 9:13 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael P. Quirk
Quirk & Hunter, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert J. Adkins, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 7, 2018 <br><br> Court of Appeals Case No. 18A04-1711-CR-2643 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Marianne L. Vorhees, Judge <br><br> Trial Court Cause No. 18C01-1704-FA-3 |

**Mathias, Judge.**

[1] Following a jury trial in Delaware Circuit Court, Robert J. Adkins ("Adkins") was convicted of two counts of Class A felony child molesting and one count of

Class D felony disseminating matter harmful to minors. The trial court sentenced Adkins to an aggregate term of forty-two years of incarceration. Adkins appeals and presents three issues, which we restate as:

I.   Whether the trial court erred by permitting the prosecuting attorney to refer to Adkins's taped statement to the police, in which he admitted to molesting the victim, as a confession;

II.  Whether the trial court erred by not declaring a mistrial because a portion of Adkins's taped statement to the police contained a reference to a polygraph examination; and

III. Whether the trial court erred by permitting the State to amend the information charging Adkins with dissemination of matter harmful to minors during trial.

[2] We affirm.

## Facts and Procedural History

[3] At the time relevant to this appeal, A.N., who was born in October 2002, was close with her maternal aunt, April ("April"), and her aunt's husband, the defendant Adkins. In 2011, when A.N. was nine years old, she visited Adkins's home on one particular occasion. Adkins showed A.N. a pornographic video on his laptop computer of a man and a woman engaged in sexual intercourse. Adkins then fondled A.N.'s breasts and genital area, inserted his fingers into her vagina, and licked her vagina. He also showed A.N. his penis.

[4] Some time after this incident, Adkins and his wife moved to a different house, which A.N. did not visit very often. But when the Adkinses moved yet again, A.N. resumed her almost weekly visits. Adkins began to tell A.N. that she was "getting so beautiful" and "growing into [her] body[.]" Tr. Vol. 3, pp. 99–100.

He also asked A.N. if she was still a virgin and offered her alcohol. He again showed A.N. a pornographic video, this time of two women engaged in sexual activities, on his laptop. On one occasion, A.N. was in her cousin's room watching a movie when Adkins came in and placed his hands on A.N.'s breasts, inserted his finger into her vagina, and licked her vagina.

[5] On another occasion, Adkins offered A.N. alcohol and money in exchange for sex. Adkins told A.N. that he had previously paid another woman for sex. He also told A.N. that if she knew of anyone her age that would be willing to have sex with him in exchange for money, "he could make something happen." *Id.* at 109. When Adkins and his wife moved to another house, A.N. continued to visit. At this house, Adkins again molested A.N. when she was approximately eleven or twelve years old by placing his fingers on and in her vagina.

[6] In March 2017, A.N. wrote a letter to her girlfriend, who apparently had a bad experience with her own uncle. Regarding this, A.N. wrote:

> I wish i had advice for the stuff going on w/ your uncle but my mind is honestly completely blank baby. Im so sorry! Like i got raped when I was twelve by my uncle but i never said anything because i didn't want every one to hate me. 💔

Ex. Vol., Defendant's Ex. A, p. 5 (typographic errors in original). Somehow, this note was misplaced and found by a school guidance counselor, who confronted A.N. regarding the accusations about her uncle. This counselor informed A.N. that the molestation needed to be reported, so A.N. wrote a

letter to her mother describing what Adkins had done to her. A.N.'s mother then informed the police.

[7] On April 10, 2017, the police interviewed Adkins. The interrogating officer read Adkins his *Miranda* rights, and Adkins signed a waiver of his rights. The officer confronted Adkins with A.N.'s accusations, which Adkins initially denied. Adkins admitted that he may have brushed against A.N.'s breasts while wrestling with her. Eventually, however, after several hours of interrogation, Adkins admitted to placing his fingers inside A.N.'s vagina, fondling her breasts, performing oral sex on her, and showing her pornography.

[8] On April 17, 2017, the State charged Adkins with two counts of Class A felony child molesting and one count of Class D felony disseminating of matter harmful to minors.[1] At a pre-trial hearing held on September 18, 2017, the trial court heard arguments on the State's motions in limine. At this same hearing, Adkins made an oral motion in limine seeking to prohibit the State from referring to Adkins's taped statement to the police as a "confession or admission," except during closing argument. Tr. Vol. 2, p. 6. The prosecuting attorney indicated that the State had no objection. Accordingly, the following day, the trial court entered an order that granted the State's motions and also granted Adkins's oral motion regarding the statement to the police, stating in relevant part: "The Court now GRANTS the Defendant's oral Motion in

---

[1] The State also charged Adkins with one count of Class D felony dissemination of matter harmful to minors regarding A.N.'s brother. The jury acquitted Adkins on this charge.

Limine as to referring to the Defendant's statement as a 'confession' or 'admissions' except as to characterizations that the State may make in closing argument." Appellant's App. Vol. 2, p. 59.

[9] A jury trial began on September 25, 2017. At the conclusion of the State's evidence, Adkins moved for a directed verdict on all counts. With regard to the charge of dissemination of matter harmful to minors, Adkins argued that showing pornography on his computer to A.N. did not constitute "disseminating" as set forth in the charging information and the statute it was based on. Tr. Vol. 3, pp. 209–10. The State argued that it had met this definition, but nevertheless moved to amend the information to conform with the evidence, i.e., to allege that instead of "disseminat[ing] matter harmful to minors" under Indiana Code section 35-49-3-3(a)(1), Adkins instead "display[ed] matter that is harmful to minors in an area to which minors have visual, auditory, or physical access," under section 35-49-3-3(a)(2). Tr. Vol. 3, pp. 213–14. Adkins objected, claiming that he had based his defense on the original language of the charging information. The trial court took the matter under advisement. The State then filed a written motion to amend the language of the information charging Adkins with dissemination of matter harmful to minors the following day, the last day of trial, which motion the trial court granted.

[10] At the conclusion of the trial, the jury found Adkins guilty of Class A felony child molesting and of Class D felony disseminating matter harmful to a

minor.[2] On November 1, 2017, the trial court sentenced Adkins to concurrent terms of forty years on the Class A felony convictions and to a consecutive term of two years on the Class D felony conviction. Adkins now appeals.

## I. Alleged Violations of the Motion in Limine

[11] Adkins first contends that the State repeatedly violated the trial court's motion in limine and that he was prejudiced by this violation. As noted above, the trial court granted Adkins's oral motion in limine prohibiting the State from referring to Adkins's taped statement to the police as a "confession" or "admission" except in closing argument. Appellant's App. Vol. 2, p. 59. On appeal, Adkins claims that the State violated this order "30 times." Appellant's Br. at 10. Adkins, however, fails to cite to any portion of the transcript in which the State or the State's witnesses refer to Adkins's statement as a "confession" or "admission." It is not our role to scour the transcript in search of these alleged violations. *See Myers v. State*, 33 N.E.3d 1077, 1105 n.8 (Ind. Ct. App. 2015) (noting that the court on appeal would not scour the voluminous record to search for support of appellant's contentions), *trans. denied*.

[12] Our review of the transcript finds little support for Adkins's contentions. To the contrary, our search of the transcript indicates that the only times the words "confession" or "admission" were used were during Adkins's own counsel's questions regarding false confessions and the witnesses' answers in response to

---

[2] As noted above, the jury acquitted Adkins on the charge of disseminating matter harmful to a minor with regard to A.N.'s brother.

these questions. *See*, *e.g.*, Tr. Vol. 3, p. 20 (testimony of interrogating officer responding to defense counsel's cross-examination regarding why police did not investigate another individual, "He [Adkins] admitted to the crime, and I had no reason to go talk to [the other individual]."); *Id.* at 74 (testimony of interrogating officer responding to defense counsel's questions suggesting that officer had already informed Adkins of the substance of the accusations against him, claiming that he had not informed Adkins of specific details, "so if he confess[es] and give[s] me specific details, then he's recalling an incident and not something I told him."); *Id.* at 81–82 (defense counsel questioning interrogating officer, "In any of your training, did they talk to you about the dangers of false confessions?" and "you don't recall anything about dangers of false confessions during any of [your] trainings[?]" and "So they sent you to a school and they didn't bring anything up about the dangers of false confessions?" and "Are you aware that people falsely confess to things?"); *Id.* at 82 (interrogating officer's testimony that he was not trained on false confessions and that he tries not to tell suspects specific details "so when they do confess, they - they're not just saying yes or no, they're - they're explaining an actual narrative of an event.").[3]

---

[3] The word "admit" was used by both defense counsel and the interrogating officer during cross-examination. *See id.* at 55 (defense counsel asked the interrogating officer whether Adkins, during the interrogation, "did admit that there was pornography on [his computer?]" to which the officer replied, "He did – he did admit to viewing pornography on there."); *Id.* at 61 (defense counsel asked the officer, "Did it ever dawn on you that he didn't know? He actually is innocent? Or did you at that point think this guy's guilty?" to which the officer answered, "He had already admitted there was something that he didn't want to talk to me about because he didn't want to go to jail."); *Id.* at 67 (defense counsel asked the officer, "At the 2:39 mark, you cut [Adkins] off and you said, I can get you charged. It doesn't matter what you tell me or not. Was that a true

[13] It appears that neither the prosecuting attorney nor the State's witnesses otherwise mentioned the word "confession" or "admission" until the State's closing argument, which was permitted under the trial court's order on Adkins's motion in limine. Adkins's claim that the State repeatedly violated the court's order on his motion in limine is meritless.[4]

## II. Reference to Polygraph Examination

[14] Adkins next argues that the trial court erred by admitting into evidence a portion of his statement to the police which appears to reference hooking Adkins up to a polygraph machine. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Harrison v. State*,

---

statement?" and the officer responded, "I felt like I had enough since he had already admitted there was something that he didn't want to tell me about because he didn't want to go to jail. I felt that was enough that I could – I could pursue with a probable cause affidavit for his arrest."); *Id.* at 80 (testimony of interrogating officer during cross-examination that Adkins "admitted" to having an extra-marital affair after initially denying it). Again, all of these questions came during cross-examination by defense counsel.

[4] And even if the State or the State's witnesses had referred to Adkins's statement to the police as a "confession" or "admission," we fail to see how he would have been harmed thereby. The jury heard the admitted portions of the statement, including Adkins's initial, repeated denials, but also his eventual admission to molesting A.N. and showing her pornography. Referring to the statement as a "confession" or "admission" would not have been inaccurate. *See Opper v. United States*, 348 U.S. 84, 91 n.7 (1954) ("A confession is an acknowledgment in express words, by the accused in a criminal case, of the truth of the guilty fact charged or of some essential part of it."). Nor do we believe it would have been reversible error to refer to Adkins's statement as a confession or admission. *See United States v. Hicks*, 393 Fed. Appx. 201, 204 (5th Cir. 2010) (holding that no error occurred where prosecutor did not characterize the defendant's statements generally as a confession or admission of guilt on a particular charge but instead referred to specific admissions of fact the defendant made to the police, and it was defendant's own counsel who extensively questioned the police about recording "confessions" by witnesses); *United States v. Goodlow*, 105 F.3d 1203, 1207 (8th Cir. 1997) (holding that prosecutor's reference to defendant's statement to the police as a "confession" was not misconduct where, even though defendant denied use of force or threat of force element, he admitted to the remaining elements of the crime for which he was convicted). *Cf. United States v. Morsley*, 64 F.3d 907, 912–13 (4th Cir. 1995) (holding that prosecutor's reference to defendant's statement, in which he admitted to several aspects of his involvement in a conspiracy but did not formally confess his guilt, was improper).

32 N.E.3d 240, 250 (Ind. Ct. App. 2015), *trans. denied*. We therefore review the court's decision on appeal only for an abuse of that discretion. *Id*. The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

[15]     The portion of Adkins's recorded statement at issue is the interrogating officer's statement: "Okay. So is there anything else you think we need to talk about **before we hook you up to this machine** and go from there?" Tr. Vol. 2, p. 181 (emphasis added). Adkins claims that this was an impermissible reference to a polygraph test and that the trial court should therefore have declared a mistrial.

[16]     As this court summarized in *Shriner v. State*:

> In general, a reference to a polygraph examination without an agreement by both parties is inadmissible and grounds for error. Proof of the fact that a polygraph examination was taken or refused is, in the absence of waiver or stipulation, inadmissible in a criminal prosecution. A defendant is prohibited from stating he offered to take a polygraph test[,] and the State is equally prohibited from referring to such a test.

829 N.E.2d 612, 618 (Ind. Ct. App. 2005) (citation and internal quotation marks omitted).

[17]     "'A mistrial should be granted where the accused, under all the circumstances, has by such trial proof been placed in a position of grave peril to which he should not have been subjected.'" *Id*. (quoting *Conn v. State*, 535 N.E.2d 1176,

1180 (Ind. 1989)). But "[a] mistrial is an extreme remedy and should only be used when no other curative measure will rectify a situation." *Id*. We afford great deference to the trial court's decision on whether to grant a mistrial because the trial judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury, and, on appeal, we review the trial court's decision only for an abuse of this discretion. *Id*.

[18] Although Adkins claims that the trial court should have declared a mistrial, our review of the record reveals that Adkins never requested a mistrial. When the above-quoted portion of Adkins's recorded statement to the police was played for the jury, Adkins requested that the jury be excused from the courtroom. Adkins's counsel stated, "I'm extremely concerned about what he just said. I thought that was to be taken out." Tr. Vol. 2, p. 182. The prosecuting attorney responded, "Judge, I thought they were all removed. In fact, I didn't hear that listening to it." *Id*. The trial court then ordered the recorded statement to be replayed, which it was. The trial court asked Adkins's counsel, "So what's the remedy? Do you want me to tell the jury to disregard and not to consider or do you want a mistrial? Do you want some time to think about it and to talk to your client[?]" *Id*. at 183. Adkins's counsel stated that he would like to take some time to speak with Adkins, and the trial court took a brief recess. When the trial resumed, the trial court resumed playing the recording without objection, and an no further point did Adkins request a mistrial.

[19] Adkins has accordingly forfeited this issue by failing to request a mistrial. *See Sherwood v. State*, 702 N.E.2d 694, 697 (Ind. 1998) (holding that defendant

waived appellate argument that reference to polygraph required mistrial where defendant failed to request a mistrial at trial). Nor does Adkins argue that this brief reference to "hooking" him up to a "machine" constituted fundamental error. And even if he did, we fail to see how this brief reference constituted fundamental error. The State did not refer to a polygraph or otherwise mention the reference to hooking Adkins up to a machine, nor was the matter ever brought up again. *See Lay v. State*, 659 N.E.2d 1005, 1013 (Ind. 1995) (holding that evidence that witness had agreed to take a polygraph examination as a condition of his plea agreement did not constitute fundamental error because the testimony did not imply that the witness had taken a polygraph test, did not reveal any results of a polygraph, and therefore generated minimal prejudice). We therefore reject Adkins's claim that this brief reference requires reversal of his convictions.

### III. Amendments to Charging Information

[20] Lastly, Adkins argues that the trial court erred by permitting the State to amend the language of the charging information with regard to the charges[5] of disseminating matter harmful to a minor. The State charged Adkins with this crime as follows: "Robert J. Adkins did knowingly disseminate matter to A.N., a minor, that is harmful to minors, to-wit: Pornography[.]" Appellant's App. Vol. 2, p. 21. As set forth above, at the conclusion of the State's evidence,

---

[5] As previously noted, the State charged Adkins with two counts of disseminating matter harmful to minors, one involving A.N. and the other involving A.N.'s brother. Because the jury acquitted Adkins on the latter charge, we limit our discussion to the amendment to the former charge.

Adkins moved for a directed verdict on all counts. With regard to the charge of disseminating matter harmful to a minor, Adkins alleged that the evidence adduced by the State—that he showed pornographic videos to A.N.—did not constitute dissemination. Ultimately, the State moved to amend the charge to allege that Adkins "displayed" pornography to A.N. instead of "disseminated" it to her. The trial court granted this motion to amend, and the jury was ultimately instructed that, to convict Adkins of disseminating matter harmful to a minor, the State had to prove that he knowingly "displayed matter to A.N., a minor . . . that is harmful to minors, to-wit, pornography . . . in an area to which minors have visual, auditory, or physical access." *Id.* at 111.

Adkins argues that the trial court erred in permitting the State to amend the charging information at this late stage. He maintains that there was no evidence that he "disseminated" pornography to A.N. and that he was therefore prejudiced when the State was allowed the amend the charging information to allege that he "displayed" pornography to A.N.

We conclude that Adkins has forfeited this argument. If a defendant believes that an amendment to the charging information is prejudicial, he must request a continuance to further evaluate and prepare his case in light of the amendment. *Miller v. State*, 753 N.E.2d 1284, 1288 (Ind. 2001); *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind. 1997); *Haak v. State*, 695 N.E.2d 944, 951 n.5 (Ind. 1998). Failing to request a continuance results in waiver of the issue on appeal. *Wright*, 690 N.E.2d at 1104 (citing *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind. 1996); *Daniel v. State*, 526 N.E.2d 1157, 1162 (Ind. 1988)). Although Adkins did

object to the State's motion to amend the charging information, he did not seek a continuance and therefore failed to preserve this claim of error.

[23] Waiver notwithstanding, Adkins would still not prevail. "A charging information may be amended at various stages of a prosecution, depending on whether the amendment is to the form or to the substance of the original information." *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014). Indiana Code section 35-34-1-5(a) provides that an information "may be amended on motion by the prosecuting attorney at any time because of any immaterial defect[.]" Immaterial defects include spelling and grammatical errors, the misjoinder of parties, the failure to state the time or place of the offense where such information is not of the essence of the offense, or "any other defect which does not prejudice the substantial rights of the defendant." I.C. § 35-34-1-5(a)(1), (2), (7), (9).

[24] In opposition to amendments of form, an information "may be amended in matters of substance . . . by the prosecuting attorney, upon giving written notice to the defendant at any time" up to thirty days prior to the omnibus date where the defendant is charged with a felony or "before the commencement of trial" "if the amendment does not prejudice the substantial rights of the defendant." I.C. § 35-34-1-5(b)(1) – (2).

[25] The amendment statute further provides, "[u]pon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the . . . information in respect to any defect, imperfection, or

omission in form which does not prejudice the substantial rights of the defendant." I.C. § 35-34-1-5(c). Thus, "[a]n amendment of substance is not permissible after trial has commenced," and after trial has begun, only amendments to fix defects, imperfections, or omission in form are permitted, so long as the substantial rights of the defendant are not prejudiced. *Blythe v. State*, 14 N.E.3d 823, 828 (Ind. Ct. App. 2014); *see also Rita v. State*, 663 N.E.2d 1201, 1205 (Ind. Ct. App. 1996) (holding that an information may be amended at any time, before, during, or after trial, so long as the amendment does not prejudice the substantial rights of the defendant), *trans. granted, summarily aff'd in relevant part*, 674 N.E.2d 968 (Ind. 1996).

[26] Whether an amendment to a charging information is a matter of substance or form is a question of law, which we review *de novo*. *Erkins*, 13 N.E.3d at 405. "A defendant's substantial rights 'include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights.'" *Id*. (quoting *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), *trans. denied*). Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.* at 405–06. An amendment is one of form and not substance if a defense under the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form. *Bennett v. State*, 5 N.E.3d 498, 514 (Ind. Ct. App. 2014), *trans.*

*denied.* And an amendment is one of substance only if it is essential to making a valid charge of the crime. *Id.*

[27] Here, Adkins insists that the amendment was one of substance because, under the original language of the information, he had a defense that was not available to him under the amended information, i.e., that he did not "disseminate" pornography to A.N. The statute under which Adkins was charged provides in relevant part:

> (a) Except as provided in subsection (b), a person who knowingly or intentionally:
>
>> (1) disseminates matter to minors that is harmful to minors;
>>
>> (2) displays matter that is harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by the minor's parent or guardian;
>
> * * *
>
> commits a Class D felony.

Ind. Code § 35-49-3-3(a) (2006).[6] Thus, the amendment changed the subsection under which Adkins was charged from 3(a)(1) to 3(a)(2). Adkins argues that, by amending the charging information to allege that he displayed, as opposed to

---

[6] This statute was amended effective July 1, 2014 to provide the crime is now a Level 6 felony. We cite to the version of the statute that was in effect at the time Adkins committed the crime.

disseminated, the pornographic video, the State made a substantive change to the charge. We disagree.

[28] Under the original charge, Adkins was alleged to have disseminated pornography to A.N. The probable cause affidavit supporting Adkins's arrest and charges set forth the factual basis of this charge, i.e., that Adkins showed pornographic videos to A.N. Under the amended information, the factual basis for the charge remained the same—that Adkins showed pornographic videos to A.N. Thus, any defense Adkins had to the original charge was equally available under the amended charging information.[7] Indeed, Adkins's defense at trial was to argue that he did not show A.N. pornography, and this defense was still available to him after the amendment to the charging information. Therefore, the amendment was not one of substance, and could be made at any time.

---

[7] Adkins claims that the amended information deprived him of his defense that showing a pornographic video does not constitute "dissemination." But if this tautology were the rule, then *any* amendment would necessarily constitute a substantive change. For example, in *Jones v. State*, 863 N.E.2d 333, 338 (Ind. Ct. App. 2007), we held that the State's amendment of a charging information one week before trial was one of form, and not of substance, even though the amendment altered the identity of the substance the defendant was alleged to have possessed from cocaine to heroin. The defendant in *Jones* had a "defense" under the original charging information that was taken away by the change only in the sense that he could no longer argue that the substance he possessed was heroin and not cocaine as originally alleged. But we still held that the State's late amendment did not cause Jones to lose any potential defenses or affect the application of his evidence to the crime charged. *Id.* Indeed, the discovery provided to Jones made it clear that the substance he was charged with possessing was heroin, not cocaine. *Id.* at 338–39; *see also Owens v. State*, 263 Ind. 487, 497–98, 333 N.E.2d 745, 750 (1975) (holding that amendment of charging information on day of trial to allege that defendant shot victim with a revolver instead of a shotgun was one of form, not substance, even though defendant would have had a technical defense to original charge in that he did not use a shotgun); *Markoff v. State*, 553 N.E.2d 194, 195 (Ind. Ct. App. 1990) (holding that amendment on the day of trial to change the name of the owner of the building in which a burglary occurred was one of form, not substance, even though defendant would have had a technical defense to the original charge in that the building was not owned by the person alleged in the original information).

# Conclusion

[29] No reversible error occurred when witnesses referred to Adkins's taped statement to the police as a "confession." Not only was this description accurate, most of it was elicited by Adkins's own counsel. The trial court also did not err by failing to declare a mistrial when a portion of Adkins's recorded statement to the police referenced "hooking" Adkins up to "this machine." Adkins did not request a mistrial, and this brief reference did not require a mistrial or otherwise constitute fundamental error. Lastly, the trial court did not err in permitting the State to amend the information charging Adkins with disseminating matter harmful to a minor because the amendment was not one of substance and could therefore by made at any time. Accordingly, we affirm the judgment of the trial court.

[30] Affirmed.

Riley, J., and May, J., concur.